

# MIDLAND NATIONAL®
## Life Insurance Company

*A Member of the Sammons Financial Group*     *A Stock Company*

Principal Office:  4601 Westown Parkway, Suite 300, West Des Moines, IA  50266♦(515) 440-5500
Executive Office:  One Sammons Plaza, Sioux Falls, SD  57193 ♦ (800) 923-3223

In this Policy, Midland National Life Insurance Company is referred to as "We", "Us", "Our", or the "Company".  "You" and "Your" refer to the Owner.

**This is a legal Contract between You and Us.  Read it carefully.**

We agree to pay to the Beneficiary the Policy Proceeds upon the Insured's death prior to the Maturity Date while this Policy is in effect.  Payment will be made upon receipt at Our Executive Office of due proof of the Insured's death.  If the Insured is living on the Maturity Date and the Maturity Date is not extended, the Net Cash Surrender Value will be paid to You.  This agreement is subject to the terms of this Policy.

**CONSIDERATION -** This Policy is issued in consideration of any application(s) and payment of the first premium.

**RIGHT TO EXAMINE POLICY - It is important to Us that You are satisfied with this Policy and that it meets Your insurance goals.  Read it carefully.  If You are not satisfied with it You may return it to Our Executive Office or to Your agent or any other agent of the Company within 20 days after You receive it.  We will then void it as of the Policy Date as though it was never issued and We will refund all premiums that have been paid.**

Issued and signed by Midland National Life Insurance Company at its Executive Office.

**President**                    **Secretary**

# DUPLICATE

### FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

### ADJUSTABLE DEATH BENEFIT

### INSURANCE PAYABLE UPON DEATH BEFORE MATURITY DATE
### PREMIUMS PAYABLE TO INSURED'S AGE 100

### SEE THE "POLICY PROCEEDS" PROVISION TO DETERMINE
### THE AMOUNT PAYABLE AT DEATH

### NON PARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS

L13113

## Guide to Policy Provisions

**Section**

Face Page  Right to Examine Policy

Schedules  Schedule of Policy Benefits
Table of Surrender Charges
Corridor Percentage Table
Table of Guaranteed Monthly Cost of
Insurance Rates
Additional Benefits Provided by
Endorsement or Rider
Extended No Lapse Guarantee Schedule of
Premium Guarantee Amounts

**1** ...............**DEFINITIONS**

**2** ...............**POLICY PROCEEDS**
2.1 ............Payment of Proceeds
2.1.1 .........Proceeds Payable
2.2 ............Death Benefit
2.3 ............Corridor Percentage

**3** ...............**GENERAL PROVISIONS**
3.1 ............Contract
3.1.1 .........Entire Contract
3.1.2 .........Changes to Policy
3.1.3 .........Incontestability
3.1.4 .........Suicide
3.1.5 .........Misstatement of Age or Sex
3.1.6 .........Non-Participating
3.2 ............Ownership and Beneficiary
3.2.1 .........Owner's Rights
3.2.2 .........Change of Owner and Contingent Owner
3.2.3 .........Assignment
3.2.4 .........Beneficiary
3.2.5 .........Change of Beneficiary
3.2.6 .........Beneficiary Death in Common Disaster
3.2.7 .........Right to Request this Policy
3.2.8 .........Termination

**4** ...............**PREMIUMS**
4.1 ............Payment of Premiums
4.2 ............Maximum Premium Limits
4.3 ............Initial No Lapse Guarantee Period
4.4 ............Initial No Lapse Guarantee Premium
Requirement
4.5 ............Continuation of Insurance
4.6 ............Grace Period
4.7 ............Additional Required Premium
4.8 ............Reinstatement

**Section**

**5**................**EXTENDED NO LAPSE GUARANTEE**
5.1 ............Premium Guarantee Accounts
5.2............Account Premium Load
5.3............Account Interest Rate
5.4............Required Premium for Extended No Lapse
Guarantee
5.5............Account Death Benefit
5.6............Account Premium Rates
5.7............Account Expense
5.8............Required Rider Amount
5.9............Allocation Among Accounts
5.10..........Waiver of Charges

**6**................**RIGHT TO CHANGE THE DEATH BENEFIT**
6.1............Changes in Specified Amount
6.2............Changes in Death Benefit Option

**7**................**POLICY VALUES**
7.1............Policy Fund
7.2............Cash Surrender Value
7.3............Interest Rate
7.4............Monthly Deduction
7.4.1..........Expense Amount
7.5............Cost of Insurance
7.6............Premium Load
7.7............Cost of Insurance Rates
7.8............Declared Rates and Charges
7.9............Surrender Charge
7.10..........Withdrawal of Cash Surrender Value
7.11..........Withdrawal Charge

**8**................**ANNUAL REPORT OF POLICY STATUS**

**9**................**POLICY LOANS**
9.1............Loan Value
9.2............Loan Requirements
9.3............Interest on Policy Loans
9.4............Policy Loan Interest Rate
9.5............Zero Cost Loans
9.6............Loan and Repayment
9.7............Excess Policy Debt

**10**..............**MATURITY DATE**

Copies of all applications and any Riders are attached.

L13113

**SCHEDULE OF POLICY BENEFITS**

| | | | |
|---|---|---|---|
| **OWNER:** | ALMA ANDERSON | **POLICY NUMBER:** | Redacted 4327 |
| **INSURED:** | ALMA ANDERSON | **POLICY DATE:** | 06/28/2009 |
| **SEX:** | Female | **ISSUE AGE:** | 79 |

**PLANNED PERIODIC PREMIUM:** $.00          **SPECIFIED AMOUNT:**          $187,390

**INITIAL NO LAPSE GUARANTEE PREMIUM:** $635.38 monthly          **PREMIUM CLASS:**          Non-Tobacco

**INITIAL NO LAPSE GUARANTEE PERIOD:**     Ends 06/28/2014*

**BENEFICIARY:**                      As Specified In The Application Unless Changed As Provided In This Policy

**DEATH BENEFIT OPTION:** 1

**POLICY EXPENSE CHARGE:**                $7.00 PER MONTH FOR 21   POLICY YEARS

**UNIT EXPENSE CHARGE:**                  $1.0475   PER MONTH FOR 21  POLICY YEARS**

**MAXIMUM PREMIUM LOAD:**                20% OF PREMIUMS RECEIVED FOR 21   POLICY YEARS

**GUARANTEED INTEREST RATE:**            2.50% PER YEAR

**MAXIMUM POLICY LOAN INTEREST RATE:**   6.00% PER YEAR PAYABLE IN ARREARS

**INITIAL POLICY YEAR FOR ZERO COST LOANS:** 11TH

**MINIMUM SPECIFIED AMOUNT:**            $25,000

**MINIMUM INCREASE AMOUNT:**             $25,000

**MINIMUM WITHDRAWAL AMOUNT:**           $500.00

**WITHDRAWAL CHARGE:**                    $25.00, APPLIES TO 2ND WITHDRAWAL AND EACH SUBSEQUENT

**BASIS OF VALUES:**          2001 CSO, Sex Distinct, Smoker Distinct, Age Nearest Birthday Mortality Tables

**SEE FOLLOWING TABLE OF SURRENDER CHARGES AND "SURRENDER CHARGE" IN SECTION 7.9.**

**DESCRIPTION OF BASE POLICY BENEFITS**          **MATURITY DATE***
  FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE          06/28/2051

  * Based on the Planned Periodic Premium and Guaranteed Charges and Interest Rates, coverage will expire on the Insured's Policy Age 121. This statement is based on the guaranteed provisions of the Policy, including the Extended No Lapse Guarantee. This statement assumes that the Planned Periodic Premiums are paid when they are due for 21 years and that You do not take any Policy Loans or Withdrawals or make other changes to Your policy.

LS131

** The Unit Expense Charge may change based upon increases or decreases in the Specified Amount.

*** It is possible that coverage will lapse prior to the Maturity Date shown, if premiums paid are insufficient to continue coverage to such date.

INQUIRIES REGARDING YOUR POLICY SHOULD BE DIRECTED TO YOUR AGENT, OR, IF HE OR SHE IS NOT AVAILABLE TO OUR EXECUTIVE OFFICE AT THE FOLLOWING ADDRESS:

     MIDLAND NATIONAL LIFE INSURANCE COMPANY
     ATTN: POLICYOWNER SERVICE
     EXECUTIVE OFFICE: ONE SAMMONS PLAZA
     SIOUX FALLS, SD 57193
     TOLLFREE 1-800-923-3223

SCHEDULE OF POLICY BENEFITS (CONTINUED)
TABLE OF SURRENDER CHARGES
(per thousand of Specified Amount)

| Policy Year | Surrender Charge Factor | Policy Year | Surrender Charge Factor |
|---|---|---|---|
| 1 | 53.00 | 11 | 29.15 |
| 2 | 50.35 | 12 | 26.50 |
| 3 | 47.70 | 13 | 23.85 |
| 4 | 45.05 | 14 | 21.20 |
| 5 | 42.93 | 15 | 18.55 |
| 6 | 40.81 | 16 | 15.90 |
| 7 | 38.69 | 17+ | 0.00 |
| 8 | 36.57 | 18+ | 0.00 |
| 9 | 34.45 | 19+ | 0.00 |
| 10 | 31.80 | 20+ | 0.00 |
| | | 21++ | 0.00 |

## CORRIDOR PERCENTAGE TABLE
### Standard Death Benefit

| Insured's Policy Age | Percentage | Insured's Policy Age | Percentage |
|---|---|---|---|
| 0-40 | 250% | 60 | 130% |
| 41 | 243% | 61 | 128% |
| 42 | 236% | 62 | 126% |
| 43 | 229% | 63 | 124% |
| 44 | 222% | 64 | 122% |
| 45 | 215% | 65 | 120% |
| 46 | 209% | 66 | 119% |
| 47 | 203% | 67 | 118% |
| 48 | 197% | 68 | 117% |
| 49 | 191% | 69 | 116% |
| 50 | 185% | 70 | 115% |
| 51 | 178% | 71 | 113% |
| 52 | 171% | 72 | 111% |
| 53 | 164% | 73 | 109% |
| 54 | 157% | 74 | 107% |
| 55 | 150% | 75 - 90 | 105% |
| 56 | 146% | 91 | 104% |
| 57 | 142% | 92 | 103% |
| 58 | 138% | 93 | 102% |
| 59 | 134% | 94 | 101% |
| | | 95 + | 100% |

LS131

SCHEDULE OF POLICY BENEFITS (CONTINUED)

TABLE OF GUARANTEED COST OF INSURANCE RATES
MAXIMUM MONTHLY COST OF INSURANCE PER $1,000

| | MALE | | FEMALE | |
|---|---|---|---|---|
| Attained Age | Pref Plus Pref NT Non-Tob Plus Non Tobacco | Pref Tobacco Tobacco | Pref Plus Pref NT Non-Tob Plus Non Tobacco | Pref Tobacco Tobacco |
| 0 | 0.08 | 0.00 | 0.04 | 0.00 |
| 1 | 0.05 | 0.00 | 0.03 | 0.00 |
| 2 | 0.03 | 0.00 | 0.02 | 0.00 |
| 3 | 0.02 | 0.00 | 0.02 | 0.00 |
| 4 | 0.02 | 0.00 | 0.02 | 0.00 |
| 5 | 0.02 | 0.00 | 0.02 | 0.00 |
| 6 | 0.02 | 0.00 | 0.02 | 0.00 |
| 7 | 0.02 | 0.00 | 0.02 | 0.00 |
| 8 | 0.02 | 0.00 | 0.02 | 0.00 |
| 9 | 0.02 | 0.00 | 0.02 | 0.00 |
| 10 | 0.02 | 0.00 | 0.02 | 0.00 |
| 11 | 0.02 | 0.00 | 0.02 | 0.00 |
| 12 | 0.03 | 0.00 | 0.02 | 0.00 |
| 13 | 0.03 | 0.00 | 0.03 | 0.00 |
| 14 | 0.04 | 0.00 | 0.03 | 0.00 |
| 15 | 0.05 | 0.05 | 0.03 | 0.03 |
| 16 | 0.06 | 0.07 | 0.03 | 0.03 |
| 17 | 0.07 | 0.08 | 0.03 | 0.04 |
| 18 | 0.08 | 0.09 | 0.04 | 0.04 |
| 19 | 0.08 | 0.10 | 0.04 | 0.05 |
| 20 | 0.08 | 0.11 | 0.04 | 0.05 |
| 21 | 0.08 | 0.11 | 0.04 | 0.05 |
| 22 | 0.08 | 0.12 | 0.04 | 0.05 |
| 23 | 0.08 | 0.12 | 0.04 | 0.06 |
| 24 | 0.08 | 0.13 | 0.04 | 0.06 |
| 25 | 0.08 | 0.14 | 0.04 | 0.06 |
| 26 | 0.09 | 0.14 | 0.04 | 0.07 |
| 27 | 0.09 | 0.15 | 0.05 | 0.07 |
| 28 | 0.09 | 0.15 | 0.05 | 0.08 |
| 29 | 0.09 | 0.15 | 0.05 | 0.08 |
| 30 | 0.09 | 0.15 | 0.05 | 0.09 |
| 31 | 0.08 | 0.15 | 0.06 | 0.09 |
| 32 | 0.08 | 0.15 | 0.06 | 0.10 |
| 33 | 0.09 | 0.16 | 0.06 | 0.11 |
| 34 | 0.09 | 0.16 | 0.07 | 0.12 |
| 35 | 0.09 | 0.17 | 0.07 | 0.13 |
| 36 | 0.10 | 0.18 | 0.08 | 0.14 |
| 37 | 0.10 | 0.19 | 0.09 | 0.15 |
| 38 | 0.11 | 0.20 | 0.09 | 0.16 |
| 39 | 0.11 | 0.21 | 0.09 | 0.17 |
| 40 | 0.12 | 0.23 | 0.10 | 0.18 |
| 41 | 0.13 | 0.25 | 0.11 | 0.19 |
| 42 | 0.14 | 0.28 | 0.11 | 0.20 |
| 43 | 0.16 | 0.31 | 0.12 | 0.22 |
| 44 | 0.18 | 0.34 | 0.13 | 0.24 |
| 45 | 0.19 | 0.38 | 0.14 | 0.26 |
| 46 | 0.21 | 0.42 | 0.16 | 0.29 |
| 47 | 0.23 | 0.46 | 0.17 | 0.32 |
| 48 | 0.24 | 0.48 | 0.19 | 0.36 |
| 49 | 0.26 | 0.50 | 0.21 | 0.40 |

SCHEDULE OF POLICY BENEFITS (CONTINUED)

TABLE OF GUARANTEED COST OF INSURANCE RATES (continued)
MAXIMUM MONTHLY COST OF INSURANCE PER $1,000

| | MALE | | FEMALE | |
|---|---|---|---|---|
| Attained Age | Pref Plus Pref NT Non-Tob Plus Non Tobacco | Pref Tobacco Tobacco | Pref Plus Pref NT Non-Tob Plus Non Tobacco | Pref Tobacco Tobacco |
| 50 | 0.28 | 0.54 | 0.23 | 0.45 |
| 51 | 0.30 | 0.58 | 0.26 | 0.50 |
| 52 | 0.33 | 0.64 | 0.29 | 0.56 |
| 53 | 0.36 | 0.71 | 0.32 | 0.62 |
| 54 | 0.41 | 0.79 | 0.35 | 0.69 |
| 55 | 0.46 | 0.88 | 0.39 | 0.76 |
| 56 | 0.51 | 0.98 | 0.43 | 0.84 |
| 57 | 0.57 | 1.08 | 0.48 | 0.92 |
| 58 | 0.62 | 1.16 | 0.52 | 0.99 |
| 59 | 0.68 | 1.26 | 0.57 | 1.08 |
| 60 | 0.75 | 1.37 | 0.62 | 1.17 |
| 61 | 0.83 | 1.51 | 0.67 | 1.27 |
| 62 | 0.93 | 1.68 | 0.73 | 1.37 |
| 63 | 1.05 | 1.86 | 0.79 | 1.48 |
| 64 | 1.17 | 2.06 | 0.85 | 1.59 |
| 65 | 1.30 | 2.25 | 0.93 | 1.71 |
| 66 | 1.43 | 2.43 | 1.00 | 1.84 |
| 67 | 1.56 | 2.61 | 1.09 | 1.99 |
| 68 | 1.70 | 2.80 | 1.19 | 2.15 |
| 69 | 1.85 | 2.99 | 1.30 | 2.32 |
| 70 | 2.03 | 3.21 | 1.41 | 2.52 |
| 71 | 2.23 | 3.46 | 1.55 | 2.74 |
| 72 | 2.50 | 3.80 | 1.70 | 2.99 |
| 73 | 2.78 | 4.15 | 1.86 | 3.26 |
| 74 | 3.07 | 4.50 | 2.05 | 3.55 |
| 75 | 3.40 | 4.90 | 2.25 | 3.85 |
| 76 | 3.75 | 5.34 | 2.47 | 4.17 |
| 77 | 4.17 | 5.85 | 2.71 | 4.53 |
| 78 | 4.65 | 6.43 | 2.98 | 4.90 |
| 79 | 5.22 | 7.11 | 3.28 | 5.32 |
| 80 | 5.84 | 7.83 | 3.61 | 5.76 |
| 81 | 6.55 | 8.65 | 4.06 | 6.39 |
| 82 | 7.30 | 9.49 | 4.56 | 7.08 |
| 83 | 8.11 | 10.37 | 5.07 | 7.76 |
| 84 | 9.02 | 11.34 | 5.64 | 8.49 |
| 85 | 10.04 | 12.50 | 6.28 | 9.24 |
| 86 | 11.19 | 13.78 | 6.87 | 9.87 |
| 87 | 12.47 | 15.18 | 7.76 | 10.87 |
| 88 | 13.85 | 16.67 | 8.70 | 11.88 |
| 89 | 15.33 | 18.25 | 9.71 | 12.91 |
| 90 | 16.91 | 19.88 | 10.66 | 13.75 |
| 91 | 18.42 | 21.38 | 11.14 | 13.93 |
| 92 | 20.02 | 22.93 | 12.09 | 14.68 |
| 93 | 21.73 | 24.57 | 13.53 | 15.91 |
| 94 | 23.59 | 26.30 | 15.37 | 17.50 |
| 95 | 25.57 | 28.26 | 17.70 | 19.97 |
| 96 | 27.43 | 30.02 | 19.97 | 22.28 |
| 97 | 29.46 | 31.92 | 22.37 | 24.66 |
| 98 | 31.67 | 33.97 | 22.79 | 24.78 |
| 99 | 34.10 | 36.18 | 24.20 | 25.97 |
| 100+ | 0.00 | 0.00 | 0.00 | 0.00 |

LS131

## SCHEDULE OF POLICY BENEFITS (CONTINUED)

### ADDITIONAL BENEFITS PROVIDED BY ENDORSEMENT OR RIDER

| DESCRIPTION OF ADDITIONAL POLICY BENEFITS | YEARS PAYABLE/ EXPIRY DATE | BENEFIT UNITS OR AMOUNT | ANNUAL PREMIUM |
|---|---|---|---|
| ACCELERATED BENEFIT RIDER - TERMINAL ILLNESS | N/A | | NONE |
| ACCELERATED BENEFIT RIDER - CHRONIC ILLNESS | N/A | | NONE |

LS131

EXTENDED NO LAPSE GUARANTEE
SCHEDULE OF PREMIUM GUARANTEE AMOUNTS

The amounts shown in this schedule are used only in the calculation of the
Premium Guarantee Accounts and do NOT affect the calculation of the Policy
Fund, Cash Value or Policy proceeds. The Premium Guarantee Accounts are
used only for the purpose of determining whether the Extended No Lapse
Guarantee is in effect.

ACCOUNT EXPENSE:
    Policy Expense:               $5.00 per month for  21 Policy Years
    Unit Expense Factor:        $0.8950 per month for  21 Policy Years


ACCOUNT PREMIUM LOAD:
Policy Year 1
    Cumulative Premiums up to    $8,931.01 = 25%
    Cumulative Premiums from    $8,931.01 to    $62,517.07 = 0%
    Cumulative Premiums above  $62,517.07 = 25%
Policy Years 2 - 10
    Cumulative Premiums up to    $8,931.01 = 20%
    Cumulative Premiums from    $8,931.01 to    $62,517.07 = 0%
    Cumulative Premiums above  $62,517.07 = 20%
Policy Years 11+
    Cumulative Premiums up to    $8,931.01 = 20%
    Cumulative Premiums from    $8,931.01 to    $62,517.07 = 0%
    Cumulative Premiums above  $62,517.07 = 0%

The Cumulative Premium for the Account Premium Load is set to 0 at the
beginning of each Policy Year.


ACCOUNT INTEREST RATE:
                Table I
                      4.75% per year for Policy Years 1-10
                      4.25% per year for Policy Years 11+
                Table II
                      4.75% per year for Policy Years 1-10
                      4.25% per year for Policy Years 11+

LS131

EXTENDED NO LAPSE GUARANTEE
SCHEDULE OF PREMIUM GUARANTEE AMOUNTS (CONTINUED)

GUARANTEED MONTHLY ACCOUNT PREMIUM RATES
FOR CALCULATING PREMIUM GUARANTEE ACCOUNT

| POLICY YEAR | TABLE A | TABLE B | POLICY YEAR | TABLE A | TABLE B | POLICY YEAR | TABLE A | TABLE B |
|---|---|---|---|---|---|---|---|---|
| 1 | .9525 | .9525 | 36 | .0000 | .0000 | 71 | .0000 | .0000 |
| 2 | 1.2925 | 1.2925 | 37 | .0000 | .0000 | 72 | .0000 | .0000 |
| 3 | 1.5675 | 1.5675 | 38 | .0000 | .0000 | 73 | .0000 | .0000 |
| 4 | 1.9175 | 1.9175 | 39 | .0000 | .0000 | 74 | .0000 | .0000 |
| 5 | 2.3425 | 2.3425 | 40 | .0000 | .0000 | 75 | .0000 | .0000 |
| 6 | 2.3425 | 2.9375 | 41 | .0000 | .0000 | 76 | .0000 | .0000 |
| 7 | 2.3425 | 3.5375 | 42 | .0000 | .0000 | 77 | .0000 | .0000 |
| 8 | 2.3425 | 4.2000 | 43 | .0000 | .0000 | 78 | .0000 | .0000 |
| 9 | 2.3425 | 4.9325 | 44 | .0000 | .0000 | 79 | .0000 | .0000 |
| 10 | 2.5675 | 5.7200 | 45 | .0000 | .0000 | 80 | .0000 | .0000 |
| 11 | 2.9400 | 6.5525 | 46 | .0000 | .0000 | 81 | .0000 | .0000 |
| 12 | 3.3125 | 7.3900 | 47 | .0000 | .0000 | 82 | .0000 | .0000 |
| 13 | 3.3125 | 7.9750 | 48 | .0000 | .0000 | 83 | .0000 | .0000 |
| 14 | 3.3125 | 8.5775 | 49 | .0000 | .0000 | 84 | .0000 | .0000 |
| 15 | 3.3125 | 9.2000 | 50 | .0000 | .0000 | 85 | .0000 | .0000 |
| 16 | 3.3125 | 9.8475 | 51 | .0000 | .0000 | 86 | .0000 | .0000 |
| 17 | 3.3125 | 10.7600 | 52 | .0000 | .0000 | 87 | .0000 | .0000 |
| 18 | 3.3125 | 11.8300 | 53 | .0000 | .0000 | 88 | .0000 | .0000 |
| 19 | 3.3125 | 12.9975 | 54 | .0000 | .0000 | 89 | .0000 | .0000 |
| 20 | 3.3125 | 14.3025 | 55 | .0000 | .0000 | 90 | .0000 | .0000 |
| 21 | 3.3125 | 15.7275 | 56 | .0000 | .0000 | 91 | .0000 | .0000 |
| 22 | .0000 | .0000 | 57 | .0000 | .0000 | 92 | .0000 | .0000 |
| 23 | .0000 | .0000 | 58 | .0000 | .0000 | 93 | .0000 | .0000 |
| 24 | .0000 | .0000 | 59 | .0000 | .0000 | 94 | .0000 | .0000 |
| 25 | .0000 | .0000 | 60 | .0000 | .0000 | 95 | .0000 | .0000 |
| 26 | .0000 | .0000 | 61 | .0000 | .0000 | 96 | .0000 | .0000 |
| 27 | .0000 | .0000 | 62 | .0000 | .0000 | 97 | .0000 | .0000 |
| 28 | .0000 | .0000 | 63 | .0000 | .0000 | 98 | .0000 | .0000 |
| 29 | .0000 | .0000 | 64 | .0000 | .0000 | 99 | .0000 | .0000 |
| 30 | .0000 | .0000 | 65 | .0000 | .0000 | 100+ | .0000 | .0000 |
| 31 | .0000 | .0000 | 66 | .0000 | .0000 | | | |
| 32 | .0000 | .0000 | 67 | .0000 | .0000 | | | |
| 33 | .0000 | .0000 | 68 | .0000 | .0000 | | | |
| 34 | .0000 | .0000 | 69 | .0000 | .0000 | | | |
| 35 | .0000 | .0000 | 70 | .0000 | .0000 | | | |

## SECTION 1: DEFINITIONS

The following are key words used in this Policy.  They are important in describing both Your rights and Ours.  When they are used, they are capitalized.  As You read Your Policy, refer back to these definitions.

**Assign –** means to transfer Your rights as the Owner of this Policy to another person or entity.  If You transfer all of Your rights irrevocably, the Assignment is absolute.  If You transfer all or some of Your rights as the Owner of this Policy as security for a loan, but on the condition that they return to You once the debt is paid, then the Assignment is collateral.  See Section 3.2.3 for details.

**Beneficiary –** is the recipient of the Policy Proceeds at the Insured's death.  See Section 3.2.4 for details.

**Cash Surrender Value** – is the Policy Fund less any Surrender Charge.

**Contingent Beneficiary –** if any, will become the Beneficiary if the named Beneficiary dies before the Insured.  In the event of Joint Beneficiaries, the Contingent Beneficiary will become the Beneficiary if both Joint Beneficiaries die before the Insured.

**Contingent Owner –** if any, will become the Owner if the named Owner dies before the Insured.  In the event of Joint Owners, the Contingent Owner will become the Owner if both named Joint Owners die before the Insured.

**Contract –** is this Policy, including any Supplemental Benefit, schedules, the attached written application for this Policy, and any attached supplemental written application(s).

**Contract Date –** is the same as the Policy Date.

**Endorsement or Rider –** is a form which amends this Policy or which provides additional benefits.  When an Endorsement or Rider is attached to this Policy it is a part of this Policy and is subject to all the terms of this Policy unless We state otherwise in the Endorsement or Rider.

**Executive Office –** is Our office at One Sammons Plaza, Sioux Falls, SD  57193.

**Insured –** is the person whose life is covered under this Policy.  The Insured is shown in the Schedule of Policy Benefits.

**Issue Age –** is shown in the Schedule of Policy Benefits.

**Irrevocable Beneficiary –** is a Beneficiary named by You as irrevocable, whose written consent is necessary for You to exercise any right specified in this Policy.

**Maturity Date –** is the date coverage under this Policy terminates and the Policy's Net Cash Surrender Value, if any, becomes payable to You, provided this Policy is then in effect and the Insured is alive.  The Maturity Date is shown in the Schedule of Policy Benefits.  This date may be extended. If it is extended, the Net Cash Surrender Value will not be paid out on the Maturity Date.  See Section 9 for details.

**Monthly Anniversary –** is the day of the month that has the same date as the Policy Date.

**Net Cash Surrender Value –** is the Cash Surrender Value less any Policy Debt.

**Net Premium –** is the portion of each premium paid that We will add to the Policy Fund.  It is equal to the premium paid, minus the Premium Load.

**Owner –** is the person who may exercise the rights listed in Section 3.2.1.

**Policy Age –** is the Issue Age plus the number of completed Policy Years.

**Policy Anniversary –** (or Contract Anniversary when used in any attached Endorsement or Rider) is the same day and month as the Policy Date for each year this Policy is in effect.

**Policy Date –** (or Contract Date when used in any attached Endorsement or Rider) is the date on which this Policy is issued and the insurance coverage becomes effective.

**Policy Debt –** Policy Debt at any time is the total loan on the Policy on that date plus the accrued interest.

**Policy Months and Policy Years –** refer to the months and years during which this Policy is in effect.  Policy Months and Policy Years are measured from the Policy Date.

**Supplemental Benefit –** is a benefit provided by an Endorsement or Rider and is in addition to the other benefits of this Policy.

**Written Notice –** means a written form satisfactory to Us and received by Us at Our Executive Office.

## SECTION 2:  POLICY PROCEEDS

**2.1** **PAYMENT OF PROCEEDS –** Proceeds, as used in this Policy, means the amount payable on the earliest of: (1) the Maturity Date; (2) the surrender date of the Policy; or (3) the death of the Insured.  The proceeds payable on the date of death of any other person insured by Endorsement or Rider will be as provided in the Endorsement or Rider.

**2.1.1** **Proceeds Payable –** If the Insured dies while this Policy is in effect, We will pay the proceeds to the Beneficiary within two months upon receipt at our Executive Office of due proof of the Insured's death acceptable to Us.  Proceeds payable at the Insured's death are equal to:

1. The amount of the Death Benefit; plus
2. Any Supplemental Benefit providing proceeds which are payable on the Insured's death; less
3. Any Policy Debt; and less
4. Any Additional Required Premium.

Proceeds will be paid in one lump sum, unless You or the Beneficiary requests otherwise and such request is agreed to by Us.  We will pay interest from the date of the Insured's death until the date when proceeds are paid in a single sum, or paid in accordance with some other settlement agreement.   Interest will be paid at an annual interest rate determined by Us, and will be the greater amount of:  (1) the current interest rate being paid on proceeds left on deposit with Us; or (2) the rate required by state law.

The Policy Proceeds will be exempt from the claims of creditors and from legal process, to the extent the law permits.

If this Policy is surrendered, or if this Policy is in effect on the Maturity Date, the proceeds payable to You will be the Net Cash Surrender Value, if any, on such date.

**2.2** **DEATH BENEFIT –**The Death Benefit Option You have chosen is shown in the Schedule of Policy Benefits.  Under Death Benefit Option 1, the Death Benefit is the greater of:
1. The Specified Amount; or
2. The Policy Fund multiplied by the Corridor Percentage.

Under Death Benefit Option 2, the Death Benefit is the greater of:
1. The Specified Amount plus the Policy Fund; or
2. The Policy Fund multiplied by the Corridor Percentage.

**2.3** **CORRIDOR PERCENTAGE –** The Corridor Percentage Table, in a premium class other than rated, is shown in the Schedule of Policy Benefits.  The Corridor Percentage is found in this table and changes on each Policy Anniversary.  This coverage is intended to qualify as life insurance under the Internal Revenue Code of 1986, as amended.  The Corridor Percentages are subject to change if required to continue to qualify as life insurance.

## SECTION 3:  GENERAL PROVISIONS

### 3.1   CONTRACT

**3.1.1** **Entire Contract –** The entire Contract between You and Us consists of this Policy, including any attached Supplemental Benefit, any attached schedules, the attached written application for this Policy, and any attached supplemental written application(s).  Each statement made in any such written application, in the absence of fraud, is deemed a representation and not a warranty.  We will not use any statement made by the Insured, or on his/her behalf, to contest a claim under this Policy unless it is contained in a written application and attached to this Policy.

Any Supplemental Benefit attached to this Policy is a part of this Policy and is subject to the terms of the Policy, unless We state otherwise in the Supplemental Benefit.

**3.1.2** **Changes To Policy –** No one has the authority to change any part of this Policy or to waive any of its provisions unless the change is approved in writing by Our President, one of Our Vice Presidents or Our Secretary.

**3.1.3** **Incontestability –** Except for provisions granting disability benefits or accidental death benefits, We cannot contest this Policy or any Supplemental Benefit, except for insufficient payment of premiums, after it has been in effect during the Insured's lifetime for 2 years from the Policy Date or, if reinstated, for 2 years from the date of reinstatement.

Increases and reinstatements may be contested only with respect to material misstatements made in the application for the increase or reinstatement.

As long as the Policy remains contestable, the Insured, Owner, Beneficiary or next-of-kin will cooperate with the Company in any contestable investigation conducted by the Company, including, but not limited to, supplying the Company with necessary authorizations for medical and other information.

**3.1.4**   **Suicide –** If the Insured commits suicide, while sane or insane, within 2 years from the Policy Date, Our liability is limited to an amount equal to the total premiums paid, less any Policy Debt and partial withdrawals. We will pay this amount to the Beneficiary in one lump sum.

If the Insured commits suicide, while sane or insane, within 2 years from the effective date of any increase in coverage, Our liability with respect to such increase is limited to the additional Monthly Deductions charged for such increase.

**3.1.5**   **Misstatement Of Age Or Sex –** If, after the death of the Insured, We learn that the age or sex of the Insured has been stated incorrectly, the Death Benefit payable will be that which would have been purchased by the most recent Monthly Deductions based on the Insured's correct age and sex.  If, while the Insured is alive, We learn that the age or sex of the Insured has been stated incorrectly, the Specified Amount of Insurance will be changed to be that which would have been purchased by the most recent Cost of Insurance based on the Insured's correct age and sex.  All future Monthly Deductions will be based upon the correct age and sex of the Insured and the new Specified Amount of Insurance.

If, after the death of the person covered under an Endorsement or Rider, We learn that the age or sex of the person covered under an Endorsement or Rider has been stated incorrectly, the benefit payable will be that which would have been purchased by the most recent Rider charge based on the covered person's correct age and sex.

If, while the person covered under an Endorsement or Rider is alive, We learn that the age or sex of the person covered under an Endorsement or Rider has been stated incorrectly, the benefit will be changed to that which would have been purchased by the most recent Rider Charge based on the correct age and sex of the person covered under an Endorsement or Rider.  All future Monthly Deductions for such Rider or Endorsement will be based upon the covered person's correct age and sex and the new benefit amount for such Rider or Endorsement.

**3.1.6**   **Non-Participating –** This Policy does not share in Our profits or surplus.

**3.2**   **OWNERSHIP AND BENEFICIARY**

**3.2.1**   **Owner's Rights –** Without any Beneficiary's consent, You may:
1.   Transfer ownership of Your Policy by absolute Assignment;
2.   Designate, change or revoke a Contingent Owner; or
3.   Change any revocable Beneficiary during the Insured's lifetime.

With each Irrevocable Beneficiary's consent, You may:
1.   Change the Irrevocable Beneficiary during the Insured's lifetime;
2.   Receive any benefit, exercise any right, and use any privilege granted by Your Policy allowed by Us; or
3.   Agree with Us to any change or amendment of Your Policy.

If You die while the Insured is alive, the Contingent Owner, if any, will become the Owner.  If there is no Contingent Owner, ownership will pass to Your estate.

**3.2.2**   **Change Of Owner Or Contingent Owner –** On the Policy Date the Owner and any Contingent Owner are as designated in the application.  You may change the Owner by absolute Assignment as stated in Section 3.2.3. You may designate, change, or revoke a Contingent Owner while the Insured is alive. We must receive Written Notice informing Us of the designation, change, or revocation.  Upon receipt, a designation, change, or revocation takes effect as of the date the Written Notice was signed.  However, We are not liable for any actions taken by Us, including payments made, before We record the Written Notice.

**3.2.3** **Assignment –** You may Assign this Policy. We are bound by an Assignment only if We receive the original Assignment, or a certified copy, at Our Executive Office and it is accepted and recorded by Us. We are not liable for any payment made by Us before We record the Assignment. We take no responsibility for the validity of any Assignment.

You may revoke any Assignment prior to its effective date provided We receive Written Notice of revocation before the Assignment is recorded by Us.

An Assignment will not change or revoke the Beneficiary designation in effect at the time the Assignment is made. If an Assignment is absolute, Your rights and privileges, including any right to change the Beneficiary, vest in the assignee. If any Assignment is collateral, the collateral assignee has priority over the interest of any revocable Beneficiary or revocable payee.

**3.2.4** **Beneficiary –** On the Policy Date, the Beneficiary is as stated in the application. If no Beneficiary is designated in the application, You are the Beneficiary. A Beneficiary is revocable unless otherwise stated in the Beneficiary Designation. If no primary Beneficiary is living at the time of the Insured's death, the proceeds are payable to the Contingent Beneficiary, if any. If no Beneficiary is living at the time of the Insured's death, such interest vests in You.

**3.2.5** **Change Of Beneficiary –** You may change a revocable Beneficiary. We must receive Written Notice informing Us of the change. Upon receipt, a change takes effect as of the date the Written Notice was signed. However, We are not liable for any payment made by Us before We record the Written Notice.

**3.2.6** **Beneficiary Death In Common Event –** If any Beneficiary dies with the Insured in a common event, benefits will be paid as if the Beneficiary predeceased the Insured unless it is proved otherwise to Our satisfaction.

**3.2.7** **Right To Request This Policy –** If You request a change that would cause the information in the Schedule of Policy Benefits, the application or any supplemental application to be incorrect, We reserve the right to require that this Policy be returned to Us so that the appropriate changes can be made.

**3.2.8** **Termination Of Policy –** All benefits provided by this Policy will cease if:
1. You request that this Policy be surrendered; or
2. The Insured dies. (If Riders are attached to this Policy, Rider forms may provide for continuation of Rider benefits.); or
3. This Policy matures; or
4. This Policy reaches the end of the Grace Period without payment of the Additional Required Premium; or
5. You withdraw all of the Net Cash Surrender Value.

## SECTION 4: PREMIUMS

**4.1** **PAYMENT OF PREMIUMS –** The first premium is due on the Policy Date and may be paid to Our authorized agent or to Us at Our Executive Office. Each premium, other than the first, must be paid to Us at Our Executive Office on or before its Premium due date. A premium may be any amount over $50 subject to the Maximum Premium Limits.

You may pay premiums at any time. We will send premium notices to You annually, semi-annually, or quarterly. You may also pay premiums using a monthly automatic payment plan. You may ask Us to change the amount or frequency of the premium notices as long as the amount is sufficient to keep Your Policy in effect and does not violate the Maximum Premium Limits. Premiums must be paid to Us at Our Executive Office. A premium receipt signed by one of Our officers will be furnished upon request.

We reserve the right to refuse additional premiums when the Death Benefit is equal to the Policy Fund times the Corridor Percentage.

**4.2** **MAXIMUM PREMIUM LIMITS –** We will refund any premium as necessary for this Policy to continue to qualify as life insurance under Section 7702 of the Internal Revenue Code. If We accept a premium in error, We will refund it as soon as the error is discovered. We will accept any premium needed to keep this Policy in effect.

**4.3** **INITIAL NO LAPSE GUARANTEE PERIOD –** The Initial No Lapse Guarantee Period ends on the date shown in the Schedule of Policy Benefits. Regardless of the amount of Net Cash Surrender Value, this Policy is guaranteed to remain in effect during the Initial No Lapse Guarantee Period if the sum of the premiums paid, less any Policy Debt and any withdrawals, is equal to or greater than the Initial No Lapse Guarantee Premium Requirement on each Monthly Anniversary.

L13113

During the Initial No Lapse Guarantee Period, the Policy Fund may have a negative balance.  Monthly Deductions will continue to be made, and be deducted from the negative balance. At the end of the Initial No Lapse Guarantee Period, You will need to pay Us the sum of the negative balance plus the current Monthly Deduction, unless the Extended No Lapse Guarantee keeps the Policy in effect beyond the Initial No Lapse Guarantee Period.  (See Section 5).

If the Extended No Lapse Guarantee does not keep the Policy in effect beyond the Initial No Lapse Guarantee Period, We will notify You of the amount of any negative balance, plus the current Monthly Deduction.  You will have 61 days to pay the sum.  If the sum of the negative balance plus the current Monthly Deduction remains unpaid at the end of the 61 days, this Policy will terminate without value.  Written Notice will be mailed to Your last known address no later than 30 days prior to termination.

**4.4**  **INITIAL NO LAPSE GUARANTEE PREMIUM REQUIREMENT –** The Initial No Lapse Guarantee Premium Requirement is equal to:
1. The Initial No Lapse Guarantee Premium shown in the Schedule of Policy Benefits, times
2. The sum of one plus the number of Policy Months completed since the Policy Date.

**4.5**  **CONTINUATION OF INSURANCE –** Even if You stop paying premiums, this Policy will continue as long as:
1. The Net Cash Surrender Value is sufficient to make Monthly Deductions, or
2. The Policy is within the Initial No Lapse Guarantee Period and the sum of the premiums paid, less any Policy Debt and any withdrawals, has always been equal to or greater than the Initial No Lapse Guarantee Premium Requirement; or
3. The Extended No Lapse Guarantee is in effect, as described in Section 5.

**4.6**  **GRACE PERIOD –** Before this Policy will terminate for insufficient payment of premium, a Grace Period of 61 days will be given for the payment of additional premiums to keep this Policy in effect.  Notice of such premium will be mailed to Your last known address no later than 30 days prior to termination.  Such notice is also sent to any assignee of record.  During the Grace Period, the Death Benefit will be equal to the Death Benefit in effect immediately prior to the Grace Period, less any Monthly Deductions that were due during the Grace Period. The Grace Period will begin on any Monthly Anniversary where this Policy does not meet the conditions in the Continuation of Insurance provision, Section 4.5.  If the Grace Period expires without payment of the Additional Required Premium, this Policy will terminate at the end of the Grace Period without value.  If the Insured dies during the Grace Period, We will deduct the unpaid Monthly Deductions from the Policy Proceeds.

**4.7**  **ADDITIONAL REQUIRED PREMIUM**
1. If the Policy is within the Initial No Lapse Guarantee Period, and prior to entering the Grace period, the sum of premiums paid, less any Policy Debt and withdrawals has always been greater than the Initial No Lapse Guarantee Premium Requirement, the Additional Required Premium to keep this Policy in effect will be the lesser of:
   a. The Initial No Lapse Guarantee Premium Requirement at the beginning of the Grace Period, plus any Policy Debt and any withdrawals, less the sum of premiums paid; or
   b. The premium needed to increase the Net Cash Surrender Value to an amount that allows the Monthly Deduction to be made.

2. If the Policy is beyond the Initial No Lapse Guarantee Period or if the sum of premiums paid, less any Policy Debt and withdrawals has not always been greater than the Initial No Lapse Guarantee Premium Requirement, the Additional Required Premium will be the lesser of:
   a. The premium needed to keep the Extended No Lapse Guarantee in effect, as described in Section 5; or
   b. The premium needed to increase the Net Cash Surrender Value to an amount that allows the Monthly Deduction to be made.

**4.8**  **REINSTATEMENT –** This Policy may be reinstated following the end of the Grace Period. Such Reinstatement must be made while the Insured is living and within 5 years of the expiration of the Grace Period.  For such reinstatement, We will require:

1. Written application for Reinstatement received by Us;
2. Evidence of insurability satisfactory to Us;
3. Payment sufficient to carry the Policy from the date of lapse to the date of Reinstatement, plus payment of premium that is enough to keep the Policy in effect for 2 months following Reinstatement;
4. Payment or restoration of any Policy Debt; and
5. Deduction from the Policy Fund of all overdue Monthly Deductions.

If this Policy is reinstated during the Initial No Lapse Guarantee Period, We will reinstate the Initial No Lapse Guarantee Period, but in no event will it extend beyond the Initial No Lapse Guarantee Period.  To reinstate the Initial No Lapse Guarantee Period, the total premium paid less any Policy Debt or withdrawals must exceed the Initial No Lapse Guarantee Premium Requirement.

This Policy can be reinstated after the Initial No Lapse Guarantee Period, subject to receiving the required items 1. through 5. above, and the Policy was not surrendered for its Cash Surrender Value.

Reinstatement is effective on the first Monthly Anniversary on or following Our approval of the Reinstatement.  The Surrender Charge is not affected by Reinstatement.

## SECTION 5:  EXTENDED NO LAPSE GUARANTEE

If, on any Monthly Anniversary after the Initial No Lapse Guarantee Period, the total of all Premium Guarantee Accounts (here in after referred to as PGA I or PGA II or the "Accounts") is greater than the Policy Debt, then the Policy will not enter the Grace Period or lapse due to its Net Cash Surrender Value, even if the Net Cash Surrender Value is insufficient to pay the Monthly Deduction.  This Extended No Lapse Guarantee does not prevent the Policy from entering the Grace Period during the Initial No Lapse Guarantee Period.

**5.1**  **PREMIUM GUARANTEE ACCOUNTS** - The Premium Guarantee Accounts are reference values used to determine whether the Extended No Lapse Guarantee is in effect.  Each Premium Guarantee Account is equal to the accumulation at interest of:
1.  That Premium Guarantee Account from the end of the previous Policy Month; plus
2.  Any Premiums received in that account during the current Policy Month, less the Account Premium Load; minus
3.  The Required Premium deducted from that account at the beginning of the current Policy Month; minus
4.  The Account Expense deducted from that account at the beginning of the current Policy Month; minus
5.  The Required Rider Amount deducted from that account at the beginning of the current Policy Month; minus
6.  Any Withdrawals of cash value made during the current Policy Month that were deducted from that account.

PGA I on the Policy Date is equal to any premium received on or before the Policy Date less the Account Premium Load minus the Required Premium Amount, minus the Required Rider Amount, minus the Account Expense due on the Policy Date.  PGA II is equal to zero on the Policy Date.

The Premium Guarantee Accounts are used only for the purpose of determining whether the Extended No Lapse Guarantee is in effect.  They do not represent an independent dollar value that can be accessed by You.  Further, they do not affect the calculation of the actual Policy Fund, Cash Surrender Value or any other value described in the Policy.

**5.2**  **ACCOUNT PREMIUM LOAD –** The Account Premium Load will be deducted from each premium paid in the calculation of the Premium Guarantee Accounts.  The Account Premium Load, and the number of Policy Years it is deducted, are shown in the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.  The Account Premium Load depends on the cumulative premium that is paid each Policy Year, as shown in the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.

**5.3**  **ACCOUNT INTEREST RATE** - The effective annual Account Interest Rate for the Accounts is guaranteed in all years and is shown in the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.  Account Interest Rate Table I will be used for PGA I and Account Interest Rate Table II will be used for PGA II.  The Monthly Account Interest rate is the monthly rate that will produce an effective annual yield equal to the Account Interest Rate.

**5.4**  **REQUIRED PREMIUM FOR EXTENDED NO LAPSE GUARANTEE –** The Required Premium for the Extended No Lapse Guarantee is determined on each Monthly Anniversary.  It is equal to: 1. multiplied by the difference between 2. and 3., shown below, divided by 1,000.
1.  The Account Premium Rate;
2.  The Account Death Benefit divided by the sum of one plus the Monthly Account Interest Rate for PGA II; and
3.  The total of all Premium Guarantee Accounts after deducting the Required Rider Amount and any Account Expense.

**5.5**  **ACCOUNT DEATH BENEFIT**
Under Death Benefit Option 1, the Account Death Benefit is the greater of:
1.  The Specified Amount in effect for the Policy Month; or
2.  The total of the Accounts multiplied by the Corridor Percentage.

Under Death Benefit Option 2, the Account Death Benefit is the greater of:
1. The Specified Amount in effect for the Policy Month, plus the total of the Accounts; or
2. The total of the Accounts multiplied by the Corridor Percentage.

The Account Death Benefit is used only for the purpose of determining the Premium Guarantee Accounts; it does not represent an independent dollar value that will be payable upon death.

**5.6    ACCOUNT PREMIUM RATES –** The Account Premium Rates are based on the Issue Age, Policy Year, Sex, Specified Amount, and Premium Class of the Insured.  The monthly Account Premium Rates are guaranteed in all years and are shown on the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts Table A and Table B.  Table B will be applied if PGA II is not equal to zero, otherwise Table A will apply.

**5.7    ACCOUNT EXPENSE –** The monthly Account Expense is equal to the sum of the Policy Expense and the Unit Expense.
- **Policy Expense –** The Policy Expense, and the number of Policy Years it is deducted, are shown on the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.
- **Unit Expense –** The Unit Expense is equal to the Unit Expense Factor shown on the Schedule of Premium Guarantee Amounts times the highest Specified Amount ever in effect divided by 1,000.  The Unit Expense is deducted for the number of Policy Years shown on the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.

**5.8    REQUIRED RIDER AMOUNT -** The Required Rider Amount is based on the additional benefits provided by any Riders to the Policy.  The Required Rider Amount for any Term Rider is shown in the Extended No Lapse Guarantee Schedule of Premium Guarantee Amounts.  The Required Rider Amount for all other riders will be the same as the Rider Charge that is deducted from the Policy Fund.

**5.9    ALLOCATION AMONG ACCOUNTS –** Premiums, Withdrawals, Required Premiums, Account Expenses and Required Rider Amounts will be allocated among the Accounts by the following rules:
1. Premiums:
   a. If the initial premium, allocate to PGA I.
   b. If any other premium paid while the total of all Accounts exceeds zero, allocate to PGA I.
   c. Otherwise, allocate to PGA II.

2. Withdrawals:
   a. Allocate to PGA I until it is reduced to zero.
   b. Allocate remaining balance to PGA I.
3. Required Premiums, Account Expenses and Required Rider Amounts:
   a. Allocate to PGA II until it is reduced to zero.
   b. Allocate balance to PGA I until it is reduced to zero.
   c. Allocate remaining balance to PGA II (in addition to any allocation to PGA II made in a. above).

**5.10    WAIVER OF CHARGES –** If the Policy contains a Waiver of Charges Rider and a Total Disability claim is approved while the Extended No Lapse Guarantee is effective, then for any month for which Monthly Deductions are thereby waived, Required Premium Amounts, the Account Expense and Required Rider Amounts will not be deducted from the Premium Guarantee Accounts.

### SECTION 6: RIGHT TO CHANGE THE DEATH BENEFIT

**6.1    CHANGES IN SPECIFIED AMOUNT –** You may change the Specified Amount while the Insured is living and the Policy is in effect.  You must send Us a written request for the change.  You may not make changes more often than once per year.  If We approve the change, We will send You an Endorsement to the Schedule of Policy Benefits.  The Endorsement will show the change and the effective date of the change.  Any change in Specified Amount is subject to the following conditions:

1. If the Specified Amount is to be decreased:
   a. The Specified Amount may not be decreased to less than the Minimum Specified Amount shown in the Schedule of Policy Benefits;
   b. The Specified Amount may not be decreased to an amount that would cause the Maximum Premium Limits to be violated;
   c. All decreases in Specified Amount will decrease previous increases in reverse order before decreasing the initial Specified Amount; and
   d. The Initial No Lapse Guarantee Premium shown in the Schedule of Policy Benefits will not decrease.

2.  If the Specified Amount is to be increased:
    a.  The Specified Amount may not be increased by less than the Minimum Increase Amount shown in the Schedule of Policy Benefits;
    b.  The increase must be applied for on a supplemental application;
    c.  We will need satisfactory evidence of the Insured's insurability;
    d.  The surrender charge factors for the increase will be shown in an Endorsement or revised Schedule of Policy Benefits.
    e.  The portion of the Specified Amount representing the increase may be assigned a Premium Class different from the Premium Class assigned to the initial Specified Amount or to any other increase; and
    f.  The Initial No Lapse Guarantee Premium shown in the Schedule of Policy Benefits will increase.

**6.2     CHANGES IN DEATH BENEFIT OPTION –** You may change the Death Benefit Option.  You must send Us a written request for the change.  The change will be effective on the date shown in the amended Schedule of Policy Benefits.  We will not allow a change if it would cause the Maximum Premium Limits to be violated.

1.  If the change is from Option 1 to Option 2, the Specified Amount will be reduced to equal the current Specified Amount minus the current Policy Fund.  This change will not be allowed if it would result in the Specified Amount being less than the Minimum Specified Amount shown in the Schedule of Policy Benefits. We will require satisfactory evidence of the Insured's insurability to make this change.

2.  If the change is from Option 2 to Option 1, the Specified Amount will be increased to equal the current Specified Amount plus the current Policy Fund.

SECTION 7: POLICY VALUES

**7.1     POLICY FUND  –** The Policy Fund is equal to the accumulation at interest of:
1.  The Policy Fund from the end of the previous Policy Month; plus
2.  Any Net Premiums received during the current Policy Month; minus
3.  The Monthly Deduction made at the beginning of the current Policy Month; minus
4.  Any partial withdrawals of cash value made during the current Policy Month.

The Policy Fund on the Policy Date is the Net Premium received on or before the Policy Date, minus the Monthly Deduction due on the Policy Date.

**7.2     CASH SURRENDER VALUE –** The Cash Surrender Value is equal to the Policy Fund less a Surrender Charge. Cash Surrender Values are at least equal to those required on the Policy Date by the state in which this Policy was delivered.  Where required, a detailed statement of the cash values and reserves under this Policy has been filed with the insurance department of the state in which this Policy was delivered.  The Minimum Cash Surrender Value is based on the table shown under the Basis of Values section shown in the Schedule of Policy Benefits, appropriately modified for rated premium classes, and the Guaranteed Interest Rate shown in the Schedule of Policy Benefits.

**7.3     INTEREST RATE -** The Minimum Guaranteed Interest Rate shown in the Schedule of Policy Benefits is the minimum annual interest rate We will apply to the Policy Fund for the life of the Policy.  We may credit a current interest rate that is greater than the Guaranteed Interest Rate.  Any current interest rate will be stated as the effective annual rate of interest.  We may credit a different current rate for the portion of the Policy Fund that is a Policy Debt, if any.

**7.4     MONTHLY DEDUCTION –** The Monthly Deduction for a Policy Month is equal to:
1.  The Expense Amount; plus
2.  The Cost of Insurance for that Policy Month; plus
3.  The Rider Charge for that Policy Month.  The Rider Charge is the cost of additional benefits provided by any Riders.

**7.4.1     Expense Amount -** The Expense Amount will never be more than:
1.  The Policy Expense Charge shown on the Schedule of Policy Benefits, plus
2.  The Unit Expense Charge shown in the Schedule of Policy Benefits times the highest Specified Amount ever in effect divided by 1000.

7.5     **COST OF INSURANCE –** The Cost of Insurance is determined on each Monthly Anniversary.  It is equal to 1. multiplied by the difference between 2. and 3, shown below, divided by $1,000 where:
1.   is the Cost of Insurance Rate;
2.   is the Insured's Death Benefit divided by 1.0020598; and
3.   is the Policy Fund after deducting the Expense Amount and the Rider Charge.

7.6     **PREMIUM LOAD –** A Premium Load will be charged each time a premium is paid.  The maximum Premium Load is found in the Schedule of Policy Benefits.

7.7     **COST OF INSURANCE RATES –** The monthly Cost of Insurance Rates in a Premium Class other than rated will never be more than those shown in the Table of Guaranteed Monthly Cost of Insurance Rates in the Schedule of Policy Benefits.  We may declare Cost of Insurance Rates that differ from those shown in the Schedule of Policy Benefits.  Cost of Insurance Rates are based on the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured.

7.8     **DECLARED RATES AND CHARGES –** We may declare Cost of Insurance Rates, Expense Amount, Premium Loads, and Interest Rates that differ from those stated in the Policy.  Changes in the Cost of Insurance Rates, Expense Amount, Premium Loads, and Interest Rates will be based upon changes in future expectations for such elements as investment earnings, mortality, persistency, and expenses.  Changes in the declared Cost of Insurance Rates and Expense Amount will vary by the Issue Age, Policy Anniversary, Sex, Specified Amount, and Premium Class of the Insured.

7.9     **SURRENDER CHARGE –** The Surrender Charge varies by Policy Year.  It is based on the Sex of the Insured, Issue Age, and Premium Class.  The Surrender Charge for the initial Specified Amount is equal to:
1.   The Surrender Charge Factor found in the Table of Surrender Charges on the Schedule of Policy Benefits; multiplied by
2.   The number of thousands of initial Specified Amount.

A Specified Amount decrease will not reduce the Surrender Charge.  If the Specified Amount increases, the Surrender Charge will increase.  The Surrender Charge for the Specified Amount increase will equal the Surrender Charge for a new Policy with:
1.   The initial Specified Amount equal to the increase in Specified Amount;
2.   The Issue Age equal to the Policy Age on the date of the Specified Amount increase; and
3.   The Premium Class for the Specified Amount increase.

7.10    **WITHDRAWAL OF CASH SURRENDER VALUE –** You may request in writing a Withdrawal of part or all of the Cash Surrender Value on any Monthly Anniversary before the Maturity Date while the Insured is living and the Policy is in effect.

If the Withdrawal is requested within 30 days of a Policy Anniversary, the amount payable on Withdrawal will be the Net Cash Surrender Value plus any charges and deductions made since that Policy Anniversary, less any Policy Loans or partial Withdrawals made on or after that date.

If the total Cash Surrender Value is withdrawn, the amount payable will be the Net Cash Surrender Value on the date of withdrawal.  The Policy will then terminate without value.

A partial Withdrawal of up to 50% of the Net Cash Surrender Value will be allowed in any one Policy year.  Withdrawals in excess of this amount will not be allowed.  The Withdrawal must be at least the Minimum Withdrawal Amount shown in the Schedule of Policy Benefits.  The amount payable upon a partial Withdrawal will be:
1.   The amount of the Withdrawal requested; minus
2.   Any applicable Withdrawal Charge.

When a partial Withdrawal is made, the amount of the Withdrawal will be deducted from the Policy Fund.  The Specified Amount will be reduced by the amount of the Withdrawal unless:

1.   Death Benefit Option 2 is in effect; or
2.   The Policy Fund after Withdrawal times the Percentage found in the Corridor Percentage Table for the next Policy Year exceeds the Specified Amount prior to Withdrawal.

L13113

A partial Withdrawal will not be allowed if it could result in the Specified Amount being less than the Minimum Specified Amount shown in the Schedule of Policy Benefits, or if it would cause the Maximum Premium Limits to be violated.

For any Withdrawal, We reserve the right to defer payment for up to 6 months after We receive Your request. We will not defer payment if a partial Withdrawal is to be used to pay premiums on policies with Us.

**7.11    WITHDRAWAL CHARGE –** There is no Withdrawal Charge for the first Withdrawal made in a Policy Year. There is a Withdrawal Charge for each subsequent Withdrawal made in that Policy Year.   The maximum Withdrawal Charge is shown in the Schedule of Policy Benefits.

## SECTION 8: ANNUAL REPORT OF POLICY STATUS

We will send You an annual report, at no charge, to Your last known address which gives a summary of this Policy's status as of the end of each Policy Year.   This report will give information regarding the Death Benefit, Cash Surrender Value, premium payments, Monthly Deductions, and interest.

In addition to the annual report, We will prepare, at Your request, a projection of the results of this Policy for future years. We will not charge more than $25 for this projection.

## SECTION 9: POLICY LOANS

**9.1    LOAN VALUE –** The Loan Value is the amount of loan available on any date.   The Loan Value equals the Net Cash Surrender Value less the interest on Policy Loans that will accumulate on the next anniversary.

**9.2    LOAN REQUIREMENTS –** After this Policy has a Loan Value, You may borrow all or part of the Loan Value if these conditions are met:
1.   The Insured is living;
2.   The Policy is in effect;
3.   You send Us a written request in a form approved by Us; and
4.   You assign this Policy to Us as sole security for a Policy Loan.

The minimum requested loan that We will process and issue a check for is $100.   However, We will allow smaller loans to pay for loan interest.

We reserve the right to require this Policy accompany the Written Request.

**9.3    INTEREST ON POLICY LOANS –** We will charge interest on any Policy Loan at the Policy Loan Interest Rate. Interest is due at the end of each Policy Year.   If interest is not paid when due, it will be added to the loan and bear interest at the same rate as the Policy Loan.

**9.4    POLICY LOAN INTEREST RATE –** The Maximum Policy Loan Interest Rate is shown in the Schedule of Policy Benefits.   However, a lower rate may be charged.   If the interest rate is lowered, it can be increased later.   Any increase or decrease will occur no more than once a year.   Any increase in the interest rate will be limited to a maximum of 1% a year.   You will be given notice sent to Your last known address of any such increase at least 30 days before the effective date of the increase.

**9.5.    ZERO COST LOANS –** Starting in the Initial Policy Year For Zero Cost Loans shown in the Schedule of Policy Benefits, and each year after that, We will provide Zero Cost Loans on the Loan Value.

The Policy Loan Interest Rate We charge on Zero Cost Loans will be the Guaranteed Interest Rate shown in the Schedule of Policy Benefits, unless a higher rate is required by the Internal Revenue Service.   If the Internal Revenue Service requires a higher interest rate, We will charge the minimum interest rate allowed.

**9.6    LOAN AND REPAYMENT –** We have the right to postpone making a Policy Loan for up to 6 months from the time We receive the request.   However, We will not postpone a Policy Loan if it will be used to pay premiums on other policies issued by Us.   All or part of any Policy Debt may be paid back at any time while this Policy is in effect.

If the Insured dies before a Policy Loan is repaid, the amount of the Policy Debt will be deducted from the Policy Proceeds.

**9.7    EXCESS POLICY DEBT –** If the Policy Debt grows to be equal to or greater than the Cash Surrender Value, Your Policy will enter the Grace Period, unless the Policy meets the conditions in the Continuation of Insurance Provision, Section 4.5.

L13113

## SECTION 10: MATURITY DATE

**MATURITY DATE –** The original Maturity Date of this Policy is shown in the Schedule of Policy Benefits. Within 90 days prior to the original Maturity Date, You may ask Us to extend the Maturity Date.  At least 90 days prior to the original Maturity Date, We will mail notice to Your last known address informing You of Your option to extend the Maturity Date. Such notice is also sent to any assignee of record.  We will extend the Maturity Date if in Our opinion this Policy still qualifies as life insurance according to the Internal Revenue Service.  We will take reasonable steps necessary to determine if the Policy will still qualify as life insurance beyond the Maturity Date, but We do NOT guarantee that Our interpretation is consistent with the opinion of the Internal Revenue Service.  **You should consult a tax advisor prior to electing to extend the Maturity Date.**

To continue this Policy beyond the original Maturity Date:
1.   The Policy cannot be in the Grace Period; and
2.   The Death Benefit must be Option 1.

Once this Policy is extended beyond the original Maturity Date:
1.   We will not allow any increases to the Specified Amount;
2.   We will not allow any changes in the Death Benefit Option;
3.   We will not accept any premium payments;
4.   We will continue to credit interest on the Policy Fund;
5.   We will not make further Monthly Deductions; and
6.   Any Riders or Supplemental Benefits will terminate.

Any Policy Debt in effect on the original Maturity Date will continue to accrue interest.  If Policy Debt causes the Net Cash Surrender Value to decrease to a negative amount, We will send notice requesting a payment large enough to bring the Net Cash Surrender Value to an amount that equals one year's interest on the Policy Debt.  Notice of such payment will be mailed to Your last known address no later than 30 days prior to termination.  If such payment is not received 30 days after mailing the notice, all coverage under the Policy will terminate without value at the end of the 30 days.



*A Member of the Sammons Financial Group*

*A Stock Company*

Principal Office:  4601 Westown Parkway, Suite 300, West Des Moines, IA  50266 ♦ (515) 440-5500
Executive Office:  One Sammons Plaza, Sioux Falls, SD  57193 ♦ (800) 923-3223

## ACCELERATED BENEFIT RIDER - TERMINAL ILLNESS

**ACCELERATED BENEFITS PAID UNDER THIS RIDER WILL REDUCE THE POLICY'S DEATH BENEFIT AND POLICY VALUES, IF ANY, WHICH INCLUDE, BUT ARE NOT LIMITED TO, THE POLICY FUND, CASH SURRENDER VALUE, AND LOAN VALUE.  A BENEFIT PAYMENT NOTICE DETAILING THE EFFECTS WILL BE SENT TO YOUR LAST KNOWN ADDRESS BEFORE THE ACCELERATED BENEFIT PAYMENT IS PAID.**

**ACCELERATED BENEFITS PAID UNDER THIS RIDER MAY BE TAXABLE.  IF SO, YOU OR YOUR BENEFICIARY MAY INCUR A TAX OBLIGATION.  AS WITH ALL TAX MATTERS, YOU SHOULD CONSULT YOUR PERSONAL TAX ADVISOR PRIOR TO ELECTING AN ACCELERATED BENEFIT UNDER THIS RIDER TO ASSESS THE TAX TREATMENT IN YOUR INDIVIDUAL CIRCUMSTANCES.  THE ACCELERATED BENEFIT OF THIS RIDER IS NOT PAYABLE IF THE POLICY TO WHICH IT IS ATTACHED IS NOT IN EFFECT.**

**Receipt of accelerated benefits under this Rider MAY AFFECT YOUR ELIGIBILITY FOR MEDICAID, SUPPLEMENTAL SECURITY INCOME ("SSI"), OR OTHER GOVERNMENT BENEFITS OR ENTITLEMENTS. Contact the Medicaid Unit of Your local Department of Public Welfare and the Social Security Administration Office for more information.**

This Rider is attached to and made a part of Your Policy.  Except as provided in this Rider, all other terms, provisions and conditions of Your Policy remain the same.

**EFFECTIVE DATE –** This Rider takes effect on the Policy Date shown in the Schedule of Policy Benefits of Your Policy.

**CONSIDERATION –** This Rider is issued in consideration of the application and payment of the initial premium for the base Policy.  There is no additional monthly charge associated with this Rider.

### BENEFITS

**ACCELERATED BENEFITS –** If We receive an approved certification that the Insured is Terminally Ill while this Rider is in effect, We will pay You, or Your estate, Accelerated Benefits during the lifetime of the Insured upon Our receipt of due Proof of Claim.  Unless the Accelerated Benefits have been otherwise assigned or designated by You, such benefit will be paid:

1. Upon Election by You; and
2. In lieu of payment of the full Death Benefit of the Policy upon death of the Insured; and
3. Subject to the terms of this Rider.

After We receive Proof of Claim, We may require a second opinion and examination by a Physician We designate.  In the event the Insured's Physician and a Physician appointed by Us disagree on whether You are Terminally Ill, eligibility for benefits will be determined by a third medical opinion that is provided by a Physician that is mutually acceptable to You and Us.  We will pay for the expense of these additional medical opinions.

The Insured's accidental death benefit, if any, will not be affected by the acceleration of benefits under this Rider.

**ACCELERATED DEATH BENEFIT –** At the time of Election, You will specify the Accelerated Death Benefit, which is the portion of the Death Benefit that You wish to accelerate.

The maximum Accelerated Death Benefit is the lesser of 50% of the Death Benefit or $500,000.

The maximum Death Benefit that We will accelerate on the Policy is $1,000,000.  This amount includes this Rider and any other Accelerated Benefit Rider.

TR138A

**ACCELERATED BENEFIT PAYMENT –** The Accelerated Benefit Payment ("Payment") will be determined upon Your election.  The following factors may be used in the determination of the Payment:
1. The Accelerated Death Benefit; and
2. An administrative fee. The maximum administrative fee will not exceed $200.00; and
3. The Accelerated Benefit Interest Rate in effect.

The Payment will be paid in a lump sum and will at least be equal to the Net Cash Surrender Value times the ratio of 1. divided by 2., as described below:
1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

**ACCELERATED BENEFIT INTEREST RATE –**the Accelerated Benefit Interest Rate will not exceed the greater of:
1. The yield on 90-day U.S. Treasury Bills on the Election Date; and
2. The maximum adjustable Policy Loan interest rate allowed by law on the Election Date.

**COORDINATION OF ACCELERATED BENEFITS -** We will not accelerate the Policy's Death Benefit as stated under this Rider, or any remaining portion of it, if We are paying benefits under another accelerated benefit Rider attached to the Policy.  You must discontinue any existing benefit payments in order to elect Accelerated Benefits under this Rider since You may only accelerate the Policy's Death Benefit under one accelerated benefit Rider at a time.

## ELECTION OF BENEFITS

**ELECTION –** To elect Accelerated Benefits under this Rider, You must complete an Application for Election of Accelerated Benefits.  We will provide this Application within 15 days of the receipt of Your Written request at Our Executive Office. If We do not send the Application to Your last known address within 15 days of the receipt of Your request, it will be considered that You complied with the Election requirements as long as You submit a Physician's written certification that the Insured is Terminally Ill.  You must provide Us with the written consent of any assignee and any irrevocable beneficiaries.

Only one Election can be made under this Rider.  If the Insured dies after You elect to receive Accelerated Benefits under this Rider, but before any Payment is made, the Election will be cancelled and the Death Benefit will be paid as described in Your Policy.

**ELECTION DATE –** The Election Date is the date that the Application for Election of Accelerated Benefits is signed by You.

## DEFINITIONS

**Immediate Family –** means the spouse, children, siblings, parents, grandparents, grandchildren, and any of their spouses.

**Physician –** is a licensed medical doctor or licensed doctor of osteopathy operating within the scope of the license.  A Physician cannot be You, the Insured, a member of Your Immediate Family, or a member of the Insured's Immediate Family.

**Proof of Claim –** is a Written Notice consisting of documents necessary to prove the Insured's eligibility for Terminal Illness Accelerated Benefits.  The Written Notice is a Physician's written certification that the Insured is Terminally Ill.

**Terminally Ill** - An Insured qualifies as being Terminally Ill if a Physician has certified that the Insured's life expectancy is 24 months or less.

## IMPACT ON POLICY PROVISIONS AND RIDERS

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON MONTHLY DEDUCTION –** If the Policy requires Monthly Deductions, We will waive the Monthly Deductions after We have paid Terminal Illness Accelerated Benefits.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON PREMIUMS –** If, instead of Monthly Deductions, the Policy requires specific Premiums to be paid, We will waive the Premiums after We have paid Terminal Illness Accelerated Benefits.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON DEATH BENEFIT –** If You elect to receive Accelerated Benefits under this Rider, the Death Benefit payable upon the death of the Insured to Your Beneficiary will be reduced.  We will reduce the Death Benefit by the Accelerated Death Benefit.

TR138A

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON SPECIFIED AMOUNT** – If You elect to receive Accelerated Benefits under this Rider, the Specified Amount (if applicable) will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

The portion of the Specified Amount that remains in effect is allowed to be less than Our minimum requirements for the Policy.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON POLICY FUND** – If You elect to receive Accelerated Benefits under this Rider, the Policy Fund will be reduced.  The Policy Fund will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON POLICY DEBT** – If You elect to receive Accelerated Benefits under this Rider while the Policy has Policy Debt, a portion of the Payment will be used to reduce the Policy Debt.  The Policy Debt and the Payment will be reduced by the Debt Repayment Amount.  The Debt Repayment Amount is equal to the Accelerated Death Benefit multiplied by the ratio of 1. divided by 2., as described below:

1. Policy Debt on the Election Date.
2. Death Benefit immediately prior to the Election Date.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON ADDITIONAL ACCOUNTS** – If a Policy provision or Rider includes an additional account used to determine whether some or all of the Policy's Death Benefit will remain in effect, the additional account and the Specified Amount used in the calculation of the additional account will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

After We have paid Accelerated Benefits under this Rider, We will waive any items deducted from the additional account.

**IMPACT OF TERMINAL ILLNESS ACCELERATED BENEFITS ON OTHER RIDERS** – Upon Election, all Riders will continue to be effective subject to the terms and conditions of each Rider.

## IMPACT OF POLICY PROVISIONS AND RIDERS

**IMPACT OF LOANS ON TERMINAL ILLNESS ACCELERATED BENEFITS** – After You have received Accelerated Benefits under this Rider, You may obtain loans as described under the loan provisions of the Policy.  As described above, a portion of the Payment will be used to repay any Policy Debt.

**IMPACT OF PARTIAL WITHDRAWALS ON TERMINAL ILLNESS ACCELERATED BENEFITS** – After You have received Accelerated Benefits under this Rider, You may make a partial Withdrawal of the Policy's Net Cash Surrender Value.

**IMPACT OF PROVISIONS OR RIDERS THAT RESTRICT CHANGES TO YOUR DEATH BENEFIT** – If You have enacted a Policy provision or Rider that restricts You from making any changes to Your Death Benefit, You may not elect Accelerated Benefits under this Rider.  This includes any restrictions specified by a Policy provision or Rider providing overloan protection.

## OTHER PROVISIONS

**INCONTESTABILITY** – This Rider is contestable on the same basis as the Policy to which it is attached.

**REINSTATEMENT** – This Rider may be reinstated on the same basis as the Policy to which it is attached.

**TERMINATION OF THIS RIDER** – This Rider will terminate upon the earliest of:

1. The Monthly Policy Date following Our receipt of Your written request to terminate this Rider; or
2. The date You elect a Non-forfeiture option under the Policy (if available); or
3. The date of Policy termination.

Termination of this Rider will not affect the payment of Accelerated Benefits that were made while this Rider was in effect.

**President**                              **Secretary**

TR138A



**MIDLAND NATIONAL®**
Life Insurance Company

*A Member of the Sammons Financial Group*

*A Stock Company*

Principal Office:  4601 Westown Parkway, Suite 300, West Des Moines, IA  50266 ♦ (515) 440-5500
Executive Office:  One Sammons Plaza, Sioux Falls, SD  57193 ♦ (800) 923-3223

## ACCELERATED BENEFIT RIDER - CHRONIC ILLNESS

**ACCELERATED BENEFITS PAID UNDER THIS RIDER WILL REDUCE THE POLICY'S DEATH BENEFIT AND POLICY VALUES, WHICH INCLUDE, BUT ARE NOT LIMITED TO, THE POLICY FUND, CASH SURRENDER VALUE, AND LOAN VALUE.  A BENEFIT PAYMENT NOTICE DETAILING THE EFFECTS WILL BE SENT TO YOUR LAST KNOWN ADDRESS BEFORE THE ACCELERATED BENEFIT PAYMENT IS PAID.**

**The accelerated benefit provided under this Rider may provide benefits to pay for long-term care services but the benefit is NOT part of a long-term care or nursing home insurance policy and the amount of the benefit may not be enough to cover Your medical, nursing home or other bills.  Accelerated Benefit Payments used to pay for long-term care services are subject to limits imposed by the federal government and any amounts received in excess of these limits are includible in taxable income.  You may use the money You receive as an accelerated benefit for any purpose.  UNLIKE CONVENTIONAL LIFE INSURANCE PROCEEDS, AMOUNTS PAYABLE AS ACCELERATED BENEFITS COULD BE TAXABLE UNDER SOME CIRCUMSTANCES.  WE RECOMMEND THAT YOU CONSULT YOUR PERSONAL TAX ADVISOR PRIOR TO ELECTING AN ACCELERATED BENEFIT UNDER THIS RIDER TO ASSESS THE TAX TREATMENT IN YOUR INDIVIDUAL CIRCUMSTANCES.  THE ACCELERATED BENEFITS OF THIS RIDER ARE NOT PAYABLE IF THE POLICY TO WHICH IT IS ATTACHED IS NOT IN EFFECT.**

**If You have long-term-care insurance, Medicaid, or similar coverage, You should consider whether the accelerated benefits provided under this Rider are suitable for Your needs.  Receipt of accelerated benefits under this Rider MAY AFFECT YOUR ELIGIBILITY FOR MEDICAID, SUPPLEMENTAL SECURITY INCOME ("SSI"), OR OTHER GOVERNMENT BENEFITS OR ENTITLEMENTS.  Contact the Medicaid Unit of Your local Department of Public Welfare and the Social Security Administration Office for more information.**

This Rider is attached to and made a part of Your Policy.  Except as provided in this Rider, all other terms, provisions and conditions of Your Policy remain the same.

**EFFECTIVE DATE –** This Rider takes effect on the Policy Date shown in the Schedule of Policy Benefits of Your Policy.

**CONSIDERATION –** This Rider is issued in consideration of the application and payment of the initial premium for the base Policy.  There is no additional monthly charge associated with this Rider.

### BENEFITS

**ACCELERATED BENEFITS –** If We receive an approved certification that the Insured is Chronically Ill while this Rider is in effect, We will pay You, or Your estate, Accelerated Benefits during the lifetime of the Insured upon Our receipt of due Proof of Claim.  Unless the Accelerated Benefits have been otherwise assigned or designated by You, such benefit will be paid:

1. Upon Election by You; and
2. In lieu of payment of the full Death Benefit of the Policy upon death of the Insured; and
3. Subject to the terms of this Rider.

After We receive Proof of Claim, We may require a second opinion and examination by a Physician We designate.  In the event the Insured's Physician and a Physician appointed by Us disagree on whether You are Chronically Ill, eligibility for benefits will be determined by a third medical opinion that is provided by a Physician that is mutually acceptable to You and Us.  We will pay for the expense of these additional medical opinions.

Accelerated Benefits under this Rider are not intended as payment of expenses eligible for reimbursement under Medicare.

The Insured's accidental death benefit, if any, will not be affected by the acceleration of benefits under this Rider.

TR137A

**ACCELERATED DEATH BENEFIT –** At the time of Election, You will specify the Accelerated Death Benefit, which is the portion of the Death Benefit that You wish to accelerate.

The maximum Accelerated Death Benefit at each Election is the lesser of 24% of the Death Benefit on the initial Election Date, or $240,000.  This amount may be smaller for a Final Election.

The maximum Death Benefit that We will accelerate on the Policy is $1,000,000.  This amount includes this Rider and any other Accelerated Benefit Rider.

**ACCELERATED BENEFIT PAYMENT –** The Accelerated Benefit Payment ("Payment") will be determined as of each Election Date.  The following factors may be used in the determination of the Payment:
1. The Accelerated Death Benefit; and
2. The Cash Surrender Value of the Policy; and
3. The Future expected lifetime of the Insured; and
4. The Accelerated Benefit Interest Rate in effect; and
5. The administrative fee. The maximum administrative fee will not exceed $200.00 for each Election.

Each Payment will be paid in a lump sum, unless a Periodic Payment is chosen.  The lump sum Payment will at least be equal to the Net Cash Surrender Value times the ratio of 1. divided by 2., as described below:
1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

**PERIODIC PAYMENT –** Under a Periodic Payment, We will divide the Payment into equal Periodic Payments that will be paid in lieu of a lump sum Payment.  You may select to receive Periodic Payments as frequently as once each month.  If the Insured dies before all Periodic Payments have been paid, We will include the remaining Payments with the Death Benefit.

**ACCELERATED BENEFIT INTEREST RATE –**the Accelerated Benefit Interest Rate will not exceed the greater of:
1. The yield on 90-day U.S. Treasury Bills on the Election Date; and
2. The maximum adjustable Policy Loan interest rate allowed by law on each Election Date.

**RESIDUAL DEATH BENEFIT –** Upon the death of the Insured, We will pay to the Beneficiary any remaining portion of the Death Benefit that We have not accelerated to the Owner under this Rider.  If a Final Election has occurred, a Residual Death Benefit will be paid to the Beneficiary in a lump sum upon due proof of the death of the Insured.  The Residual Death Benefit will be the greater of 5% of the Death Benefit on the Initial Election Date or $10,000.

**COORDINATION OF ACCELERATED BENEFITS -** We will not accelerate the Policy's Death Benefit as stated under this Rider, or any remaining portion of it, if We are paying benefits under another accelerated benefit Rider attached to the Policy.  You must discontinue any existing benefit payments in order to elect Accelerated Benefits under this Rider since You may only accelerate the Policy's Death Benefit under one accelerated benefit Rider at a time.

### ELECTION OF BENEFITS

**ELECTION –** To elect Accelerated Benefits, You must complete an Application for Election of Accelerated Benefits.  We will provide this Application within 15 days of the receipt of Your Written request at Our Executive Office. If We do not send the Application to Your last known address within 15 days of the receipt of Your request, it will be considered that You complied with the Election requirements as long as You submit a Physician's written certification that the Insured is Chronically Ill.  You must provide Us with the written consent of any assignee and any irrevocable beneficiaries.

An Election is valid for 12 months, and only one Election can be made in this 12-month period.  If the Insured dies after You elect to receive Accelerated Benefits, but before the Payment is made, the Election will be cancelled and the Death Benefit will be paid as described in Your Policy.

**ELECTION DATE –** The Election Date is the date that the Application for Election of Accelerated Benefits is signed by You.

**FINAL ELECTION –** A Final Election is available if the maximum Accelerated Death Benefit at the time of Election is greater than the remaining Death Benefit in the Policy, excluding the Residual Death Benefit.  To make a Final Election, You must choose to accelerate all of the Death Benefit in Your Policy, excluding the Residual Death Benefit.  Under a Final Election, the Payment will be paid in lieu of any remaining future Death Benefit under the Policy, excluding the Residual Death Benefit.  The Payment must first be applied to pay all debt to Us on the Policy.

Following the Final Election, all Riders attached to the Policy will terminate and We will waive all future Monthly Deductions or Premiums associated with the Residual Death Benefit.  Policy Loans are not available after a Final Election.

TR137A

## DEFINITIONS

**Activities of Daily Living** are: Bathing, Continence, Dressing, Eating, Toileting, or Transferring, as described below.

1. Bathing - washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower;
2. Continence - the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag);
3. Dressing - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs;
4. Eating - feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously;
5. Toileting - getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene; and
6. Transferring - moving into or out of a bed, chair or wheelchair.

**Chronically Ill** - An Insured qualifies as being Chronically Ill if a Physician has certified within the last 12 months that the Insured:

1. Is permanently unable to perform, for at least 90 consecutive days, without substantial assistance from another person, at least two Activities of Daily Living; or
2. Requires substantial supervision by another person to protect oneself from threats to health and safety due to Severe Cognitive Impairment.

**Immediate Family –** means the spouse, children, siblings, parents, grandparents, grandchildren, and any of their spouses.

**Physician –** is a licensed medical doctor or licensed doctor of osteopathy operating within the scope of the license. A Physician cannot be You, the Insured, a member of Your Immediate Family, or a member of the Insured's Immediate Family.

**Proof of Claim** is a Written Notice consisting of documents necessary to prove the Insured's eligibility for Accelerated Benefits. The Written Notice is a Physician's written certification that the Insured is Chronically Ill. This certification must be received every 12 months in order to continue to qualify for Accelerated Benefits.

**Severe Cognitive Impairment** means deterioration or loss of intellectual capacity that is measured by clinical evidence and standardized tests which reliably measure impairment in:

1. Short-term or long-term memory; or
2. Orientation to people, places, or time; or
3. Deductive or abstract reasoning.

## IMPACT ON POLICY PROVISIONS AND RIDERS

**IMPACT OF ACCELERATED BENEFITS ON MONTHLY DEDUCTION –** If the Policy requires Monthly Deductions, We will waive the Monthly Deductions while We are paying Accelerated Benefits. We will also waive the Monthly Deductions following a Final Election.

**IMPACT OF ACCELERATED BENEFITS ON PREMIUMS –** If, instead of Monthly Deductions, the Policy requires specific Premiums to be paid, We will waive the Premiums while We are paying Accelerated Benefits. We will also waive the Premiums following a Final Election. If We are no longer paying Accelerated Benefits, the Premiums will be calculated as if the Policy had been originally issued at the reduced Death Benefit.

**IMPACT OF ACCELERATED BENEFITS ON DEATH BENEFIT –** If You elect to receive Accelerated Benefits under this Rider, the Death Benefit payable upon the death of the Insured to Your Beneficiary will be reduced. We will reduce the Death Benefit on each Election Date by the Accelerated Death Benefit. For Periodic Payments, the Death Benefit will be reduced at the time of each Periodic Payment.

**IMPACT OF ACCELERATED BENEFITS ON SPECIFIED AMOUNT –** If You elect to receive Accelerated Benefits under this Rider, the Specified Amount (if applicable) will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

For Periodic Payments, the Specified Amount will be reduced at the time of each Periodic Payment.

The portion of the Specified Amount that remains in effect is allowed to be less than Our minimum requirements for the Policy. If prior to a Final Election We are no longer paying Accelerated Benefits, the Cost Of Insurance charges will be calculated as if the Policy had been originally issued at the reduced Specified Amount.

**IMPACT OF ACCELERATED BENEFITS ON POLICY FUND –** If You elect to receive Accelerated Benefits under this Rider, the Policy Fund will be reduced.  The Policy Fund will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

For Periodic Payments, the Policy Fund will be reduced at the time of each Periodic Payment.

**IMPACT OF ACCELERATED BENEFITS ON POLICY DEBT –** If You elect to receive Accelerated Benefits under this Rider while the Policy has Policy Debt, a portion of the Payment will be used to reduce the Policy Debt.  The Policy Debt and the Payment will be reduced by the Debt Repayment Amount.  The Debt Repayment Amount is equal to the Accelerated Death Benefit multiplied by the ratio of 1. divided by 2., as described below:

1. Policy Debt on the Election Date.
2. Death Benefit immediately prior to the Election Date.

For Periodic Payments, the Debt Repayment Amount will be divided equally over each Periodic Payment and will be applied at the time of each Periodic Payment.

**IMPACT OF ACCELERATED BENEFITS ON ADDITIONAL ACCOUNTS –** If a Policy provision or Rider includes an additional account used to determine whether some or all of the Policy's Death Benefit will remain in effect, the additional account and the Specified Amount used in the calculation of the additional account will be reduced by the ratio of 1. divided by 2., as described below:

1. Accelerated Death Benefit on the Election Date.
2. Death Benefit immediately prior to the Election Date.

For Periodic Payments, the additional account will be reduced at the time of each Periodic Payment.

While We are paying Accelerated Benefits, We will waive any items deducted from the additional account.  We will also waive these items after a Final Election.

**IMPACT OF ACCELERATED BENEFITS ON OTHER RIDERS –** Upon any Election other than a Final Election, all Riders will continue to be effective subject to the terms and conditions of each Rider.  Upon a Final Election, all Riders attached to the Policy will terminate on the final Election Date.

## IMPACT OF POLICY PROVISIONS AND RIDERS

**IMPACT OF LOANS ON ACCELERATED BENEFITS –** After You have elected to receive Accelerated Benefits, You may obtain loans as described under the loan provisions of the Policy.  As described above, a portion of each Payment will be used to repay any Policy Debt.  Policy Loans are not available following a Final Election.

**IMPACT OF PARTIAL WITHDRAWALS ON ACCELERATED BENEFITS –** After You have elected to receive Accelerated Benefits, You may make a partial Withdrawal of the Policy's Net Cash Surrender Value.  If You make a partial Withdrawal after You have elected to receive Accelerated Benefits, any Payments made after the partial Withdrawal will be reduced.

**IMPACT OF PROVISIONS OR RIDERS THAT RESTRICT CHANGES TO YOUR DEATH BENEFIT –** If You have enacted a Policy provision or Rider that restricts You from making any changes to Your Death Benefit, You may not elect Accelerated Benefits under this Rider.  This includes any restrictions specified by a Policy provision or Rider providing overloan protection.

## OTHER PROVISIONS

**INCONTESTABILITY –** This Rider is contestable on the same basis as the Policy to which it is attached.

**REINSTATEMENT –** This Rider may be reinstated on the same basis as the Policy to which it is attached.

**TERMINATION OF THIS RIDER –** This Rider will terminate upon the earliest of:

1. The Monthly Policy Date following Our receipt of Your written request to terminate this Rider; or
2. The date You elect a Non-forfeiture option under the Policy (if available); or
3. The date of Policy termination.

Termination of this Rider will not affect the payment of Accelerated Benefits that were made while this Rider was in effect.

**President**                    **Secretary**

TR137A



# MIDLAND NATIONAL
## Life Insurance Company
*A Member of the Sammons Financial Group*

Redacted 1327-7-Rd

*9301*

## GENERAL PURPOSE LIFE APPLICATION (Please Print and Use Black Ink)

Scan 39/16/09 15:49:46

### 1. PRIMARY PROPOSED INSURED ☑ SINGLE ☐ MARRIED

| | BIRTH DATE | | | STATE OF BIRTH | AGE | SEX | HEIGHT (FT. IN.) | WEIGHT (LBS.) |
|---|---|---|---|---|---|---|---|---|
| | MO. | DAY | YEAR | | | | | |
| LAST NAME Anderson FIRST Alma M.I. | Redacted | | 1939 | In | Redacted | F | | Redacted |

**1a. Are you a U.S. Citizen, or do you have a permanent Visa?** ☑ Yes ☐ No ( If no, complete Foreign Travel and Residence Questionnaire)

Social Security Number: Redacted 183

Driver's License Number: Redacted 7414

State Ind.

Occupation: Retire

Employer (Company Name and Address)

Annual Income 30,000

Net Worth 500,000

### 2. ADDITIONAL INSURED/SPOUSE PROPOSED for INSURANCE (or premium payer for juvenile policy)

| | BIRTH DATE | | | STATE OF BIRTH | AGE | SEX | HEIGHT (FT. IN.) | WEIGHT (LBS.) |
|---|---|---|---|---|---|---|---|---|
| | MO. | DAY | YEAR | | | | | |
| LAST NAME FIRST M.I. | | | | | | | | |

**2a. Are you a U.S. Citizen, or do you have a permanent Visa?** ☐ Yes ☐ No ( If no, complete Foreign Travel and Residence Questionnaire)

Social Security Number:

Driver's License Number:

State

Occupation:

Employer (Company Name and Address)

Annual Income

### DEPENDENT CHILDREN PROPOSED for INSURANCE

| | BIRTH DATE | | | STATE OF BIRTH | AGE | SEX | SOCIAL SECURITY NUMBER | HEIGHT (FT. IN.) | WEIGHT (LBS.) |
|---|---|---|---|---|---|---|---|---|---|
| | MO. | DAY | YEAR | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

### 3. RESIDENCE ADDRESS (Street, City, State, Zip)
Redacted
Lawrenceburg, In 47025

**3a. How long at this address?** 30 yrs Years Months
If less than 2 years, provide previous address.

**3b. MAILING ADDRESS (If other than residence)**

### 4. CONTACT THE PROPOSED INSURED AT:
☑ RESIDENCE 10:00 (CST) ☑ A.M. ☐ P.M.
☐ BUSINESS Time

RESIDENCE TELEPHONE NUMBER
Primary Insured Redacted 0149
Spouse ( )
Cell Phone ( )

BUSINESS TELEPHONE NUMBER
Primary Insured ( )
Spouse ( )
Cell Phone ( )

### 5. Has anyone proposed for insurance ever smoked cigarettes, cigars, pipes, or used tobacco in any form, including smokeless tobacco, nicotine patch, gum or other substitutes?

**5a. Primary Insured:** ☐ Yes ☑ No    If 'yes', provide: Type of product(s) used _____
Amount Used: ___ How often: Daily ___ Weekly ___ Monthly ___ Date of last use mm/yy ___

**5b. Additional Insured Rider/Spouse:** ☐ Yes ☐ No    If 'yes', provide: Type of product(s) used _____
Amount Used: ___ How often: Daily ___ Weekly ___ Monthly ___ Date of last use mm/yy ___

### 6. AMOUNT $ 193,000

PLAN OF PRIMARY POLICY Essential Care A-L

Agent Use Only A ☐ B ☐ C ☑

Type of Underwriting ☑ Traditional ☐ X-Press

### 7. For UL/VUL: (check if applicable)
☑ Option I ☐ Option II ☐ Rebalance
☐ Minimum Premium ☐ Target Premium

☐ Automatic Premium Loan (Whole Life Only)

Enhanced Corridor Percentage SVUL ☐ Yes ☐ No

### 8. RIDERS
☐ Waiver of Premium/Waiver of Charges
☐ Flexible Disability $_____
☐ Living Needs Rider
☑ IPGR
☐ Waiver of Surrender Charge Option

☐ Accidental Death Benefit $_____
☐ Children's Insurance Rider ___ Units
☐ Guaranteed Insurability ___ Units
☐ Estate Preservation Rider
☐ Guaranteed Death Benefit to Maturity Rider

Individual Life Rider
First ☐ Amount $_____
Second ☐ Amount $_____
☐ Pro Term Rider ☐ NLG-Option Period to Age_____
☐ Other Rider (Plan) | (Amount)

MIDLAND NATIONAL LIFE INSURANCE COMPANY • EXECUTIVE OFFICE • ONE SAMMONS PLAZA • SIOUX FALLS, SD 57193 • PRINCIPAL OFFICE • DES MOINES, IA 50266
Phone: (605) 335-5700 • New Business Fax - Red Team: (605) 373-8571 Blue Team: (605) 335-7583 Green Team: (605) 373-8573 • Fax Center: (605) 335-3621 • Internet: www.MNLife.com

SEP 14 '09 NB AM10:35

**9. PREMIUM FREQUENCY:** ☑ Annual ☐ Semi-Annual ☐ Quarterly ☐ Monthly

**PREMIUM MODE:** ☐ EFT ☐ List Billing ☐ Direct Billing (A, SA, Q) only ☐ Civil Service Allotment ☐ Military Government Allotment

List Bill Code _____

Make all checks payable to MIDLAND NATIONAL LIFE INSURANCE COMPANY

Amount of Modal Premium $ _104,000_     Amount Paid with Application $ _0_     (Receipt valid only if amount paid with application is entered here.)

**10. FOR EFT ONLY:**

DRAW DAY (1ST-28TH) ___ ___ Month Day

10a. Initial Draft ☐ Yes ☐ No

10b. Routing Transit Number

**ACCOUNT TYPE**
☐ Checking (attach voided check)
☐ Savings (must complete 10a)

Account Number

**AUTHORIZED SIGNATURE(S) OF ACCOUNT HOLDER(S)**

X

X

Financial Institution Name and Address

**11.** Please list all life insurance and annuities currently in force or pending on the life of any of the proposed insureds. This includes policies that have or will be sold, assigned or otherwise placed via life settlement, viatical or other agreements, or that you intend to replace, cancel, or sell: **If None, check here:** ☐

| Name | Company | Policy # | Pending | Issue Yr. | Basic Amount | ADB Amount | WP Amount | Intention of Replacement or Change* |
|------|---------|----------|---------|-----------|--------------|------------|-----------|-------------------------------------|
| Alma | Phoenix | Redacted, 1,475 | ☐ | 1997 | 110,000 | NA | NA | ☑Y ☐N |
| Alma | United Farm Family Life | Redacted 566 | ☐ | 1987 | 33,910 | NA | NA | ☑Y ☐N |
| | | | ☐ | | | | | ☐Y ☐N |
| | | | ☐ | | | | | ☐Y ☐N |

**\* If Yes, complete applicable Replacement Form. Use Additional sheet, if necessary.**
**If this is a 1035 Exchange, also complete 1035 Exchange paperwork and submit with application.**

**12.** Are any of the above policies being used to fund this policy? ☑Yes ☐ No

**13.** Have you or will you be compensated in any way to purchase this policy? ☐ Yes ☑No

**14.** Are you paying for this policy with your own funds? ☑Yes ☐ No

**15.** Have you financed or do you intend to finance all or a portion of the premiums for this policy? (If yes, complete applicable Disclosure and Acknowledgement Form and submit with application) ☐ Yes ☑No

**16.** Have you entered into or are you considering any other agreement in regard to this policy including but not limited to an agreement to sell, transfer or assign any rights in the policy? ☐ Yes ☑No

If the answer is 'Yes' to questions 12, 13, or 16 please provide details below. If answer to question 14 is 'No' please provide details below.

_1035 Exchange_

**17. OWNER IF OTHER THAN PROPOSED INSURED** (Include relationship to proposed insured.)

| Name | Address | Social Security Number | Relationship |
|------|---------|------------------------|--------------|
| | | | |

**18. PRIMARY BENEFICIARY**—(Class 1) (Include relationship to proposed insured.)   **19. CONTINGENT BENEFICIARY**—(Class 2) (Include relationship to proposed insured.)

_Philip Anderson - 2000, Grandchild, Shirley Graff & Donald Anderson - Son & Daughter 20,000 Each_
_Dale Anderson Sr, Son 14,000, Dale Anderson Jr & Laura Snider - Grandchildren - 29,200, Amy Taylor,_

Beneficiary designations do not apply to others covered under Family Children's Provision Riders.

**20. SPECIAL REQUESTS OR DETAILS** _Michael Graff, & Lisa Fortner, Grandchildren 26,200_

_Please Date Policy to Save Age 79_

## For Military Personnel (Including National Guard and Reserves )

**21. PERMANENT HOME OF RECORD** (Street, City, State, Zip)

**22. MILITARY ADDRESS**

**23. JOB DUTIES**

**24.** Are you currently drawing extra duty or hazard pay? ☐ YES ☐ NO

**25. MILITARY INFORMATION** ☐ USA ☐ USN ☐ USAF ☐ Other (Specify)

Pay Grade _____ Rotation Date _____ Expected Discharge Date _____

**26.** Has the Proposed Insured been a member of a special forces, special or hazardous duty organization? ☐ YES ☐ NO
If yes, provide specific details.

**27.** Has the Proposed Insured been alerted to, volunteered for, or received formal orders to a hazardous area or overseas assignment? ☐ YES ☐ NO
If yes, provide specific details.

Scan 09/16/99 15:49:18

**Must be completed for all proposed insureds, including CIR.**

28. Has any person proposed for insurance:

    (a) In the past 10 years used barbiturates, hallucinatory drugs, narcotics including cocaine, crack, ecstasy, opium derivatives, marijuana, LSD, PCP, or any derivatives of these drugs, or been advised by a medical professional to get, or undergone any treatment, counseling or hospitalization for drug abuse? . .

    (b) In the past 10 years been advised by a medical professional to get, or undergone any treatment,  counseling or hospitalization for alcoholism, excessive alcohol use or abuse? Or, drink on average more than 3 alcoholic drinks per day? . . . . . .

    (c) Had any motor vehicle moving violations or accidents or been arrested for driving under the influence of alcohol or drugs within the last five years?. .

    (d) In the past 10 years been convicted of any criminal activity, or been held or served time in any type of incarceration, jail, penitentiary, prison, probation, or parole program? Or, have any criminal charges pending against them at this time?

    (e) Flown a plane in the past 24 months or plan to fly in the next 12 months as a pilot, copilot, student pilot, military pilot, engineer in or in any other capacity except as a regularly scheduled commercial airline pilot or fare-paying passenger? If yes, complete Aviation Questionnaire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (f) Any past, present or expected activity in racing, scuba or sky diving, or any other hazardous sport or hobby? (If yes, complete Hazardous Activities Questionnaire.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (g) In the past 10 years been refused for life insurance or charged an extra premium for life insurance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (h) Traveled to or resided for more than 30 days outside of the U.S., U.S. territories, Canada, or Japan within the past 12 months or plan to travel to or reside outside of the U.S., U.S. territories, Canada, or Japan in the next 12 months? If yes, complete the Foreign Travel and Residence Questionnaire . . . . . . . . . . . . . . .

    (i) Have any bankruptcy pending or expect to file bankruptcy in the next 12 months? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Must be completed for all proposed insureds, including CIR, not subject to Tele-Underwriting or a Paramed exam.**

29. Within the last ten years, has any person proposed for insurance ever had or been treated by a medical professional for:

    (a) Chest pain, heart murmur, stroke, high blood pressure, or any other disease of the heart, blood, or blood vessels? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (b) Peptic ulcer, indigestion, or any other disease of the stomach, intestines, gall bladder or liver? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (c) Emphysema, bronchitis, asthma, pleurisy, or any other disease of the chest or lungs? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (d) Kidney stone, diabetes; albumin, pus, blood or sugar in urine; venereal disease, or any other disease of the kidneys, bladder or reproductive organs?

    (e) An immune deficiency disorder [Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex (ARC)] or been told test results indicate exposure to the AIDS virus? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (f) Severe headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any other disease of the brain or nervous system? . . . . . . . . . . .

    (g) Cancer, tumor, or any other illness or injury not mentioned above?. . . . . . . .

30. Other than indicated above, has any person proposed for insurance:

    (a) Been hospitalized in the past 5 years? . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (b) Consulted a physician during the past 5 years?

    (c) Had a change of weight in the past year? . . . . . . . . . . . . . . . . . . . . . . . . . .

    (d) Had a parent or a brother or sister who before age 60 was diagnosed with or died from cardiovascular disease, stroke, cancer (except basal or squamous cell cancer of the skin), Huntington's Chorea, familial polyposis, or polycystic kidney disease? If yes, provide age at onset and current age if living. If deceased, age at death.

31. Is any person proposed for insurance now under observation, taking treatment or medication, or been advised to have any tests, hospitalization, or surgery which has not been completed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

32. Is any person proposed for insurance currently receiving or have an application pending for any illness or disability benefits or compensation?. . . . . . . . . . . . . . . . . . . . . .

Yes  No

**Details of questions answered "yes" in Section 28 through 33. Include question number, full names and addresses of physicians and names of individuals to whom history pertains.**

Redacted

**Must be completed for all proposed insureds, including CIR.**

33. Are medical records under any other name (maiden name, etc.)?
  ☐ Yes ☐ No
If yes, please indicate full name.

Name and Address of Primary Physician and Facility Name (if not specified above, date last consulted)

Telephone Number of Primary Physician

(    )

IT IS DECLARED that statements and answers in this application, including statements by the Proposed Insured(s) in any medical questionnaire or supplement that become part of this application, are complete and true to the best knowledge and belief of the undersigned. IT IS AGREED THAT: (1) any waiver or modification of this application will not be effective unless in writing and signed by the President, or the Secretary; (2) no insurance shall be in effect under this application (except as may be provided in the receipt bearing the same date as this application) unless and until the application has been approved and accepted by the Company at its Executive Office and the policy is delivered to and accepted by the Owner and the full first premium has been paid while each person proposed for insurance is alive and while the state of health and other conditions affecting insurability are as stated in this application and any required examination and additional information. (If a List Billing Authorization or Government Allotment is indicated in section 9 and has actually been signed and delivered for the correct amount, this shall be considered the same as payment of the full first premium); (3) the acceptance of any policy issued on this application shall constitute a ratification of any correction or amendment made by the Company. No change in amount, classification, plan of insurance, or benefits shall be effective unless agreed to in writing by the applicant. I FURTHER AGREE to immediately advise the Company of any change to any of the responses contained in the application, including any change in the health or habits of any Proposed Insured(s), that arises or is discovered after completing this application, but before the Policy is effective, as defined herein.

I also acknowledge receipt of Fair Credit Reporting Act and Medical Information Bureau Notifications.

**TAX PAYER IDENTIFICATION NUMBER CERTIFICATION** - Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**
2. I am not subject to backup withholding because: (a) ☐ I am exempt from backup withholding, or (b) ☑ I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) ☐ the IRS has notified me that I am no longer subject to backup withholding. **(Please check appropriate response.)**

**FINANCIAL INSTITUTION DISCLOSURE** - Insurance products and annuities are not a deposit or other obligation of, or guaranteed by a bank, any affiliate of a bank, or savings association and are not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States, a bank, any affiliate of a bank, or savings association, and involve investment risk, including possible loss of value. The approval or disapproval of any extension of credit by the bank or an affiliate is not based on whether or not this insurance is purchased through the bank or through any particular source.

**AUTHORIZATION:** To determine eligibility for insurance, I authorize any physician, medical practitioner, health care professional, hospital, clinic, or other medically related facility, laboratory, pharmacy or pharmacy benefit manager, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, insurance support organization, independent administrator, or other organization, institution, or person, or employer having information available as to diagnosis, prescription history, medications prescribed, treatment and prognosis with respect to information regarding alcoholism, drug abuse, and psychiatric care or any physical or mental condition and/or treatment of me or my minor children and any other nonmedical information of me or my minor children to give to Midland National Life Insurance Company (the Company) or its legal representative, any and all such information. I also authorize the Company to conduct a personal telephone interview in connection with my application; and to release any such data to its reinsurers, the Medical Information Bureau, or other persons or organizations performing business or legal services in connection with my application, or as required by law when given a copy of this authorization. I understand that I may request to be interviewed in connection with the preparation of an investigative consumer report. I understand that I am entitled to receive a copy of the investigative consumer report upon request. This authorization is valid for 30 months from the date signed. I may revoke this authorization for information not then obtained by notifying the Company in writing. Such revocation will not be effective until received by the Company. I understand that I or any authorized representative will receive a copy of this authorization upon request.

**FRAUD WARNING - AR, LA, NM, and OH Residents:** Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, is a crime and subjects such person to criminal and civil penalties.

**CO Residents:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a contractholder or claimant for the purpose of defrauding or attempting to defraud the contractholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**DC and TN Residents:** Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**PA Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

**VA Residents:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the Company. Penalties include imprisonment, fines and denial of insurance benefits.

| SIGNED AT (City, State) | | DATE |
|---|---|---|
| Lawrenceburg, Indiana | | 8-27-2009 |

| SIGNATURE OF PROPOSED INSURED if 15 YEARS OR OLDER | SIGNATURE OF PROPOSED ADDITIONAL INSURED/SPOUSE |
|---|---|
| X Alma Anderson | X |

| SIGNATURE OF OWNER, (If other than Proposed Insured) | SPOUSE SIGNATURE, IF BENEFICIARY IS OTHER THAN SPOUSE AND COMMUNITY PROPERTY LAWS APPLY |
|---|---|
| | |

Soliciting Agent: Does the applicant(s) have any existing life insurance or annuities? ............................ ☑Yes ☐No
Is any insurance applied for in this application intended to replace any life insurance or annuity now in force? . ☑Yes ☐No
If a replacement is involved, submit a copy of this application and applicable Replacement Notice to the existing insurer.

| SIGNATURE OF SOLICITING AGENT | PRINT AGENT'S LAST NAME | CODE NO. | TELEPHONE NUMBER |
|---|---|---|---|
| X George F Adams | Daniels | 694E | Redacted 3202 |
| | | | CELL PHONE NUMBER |
| | | | Redacted 5796 |

| OTHER AGENT (Please Print) | % CREDIT | CODE NO. | GENERAL AGENT (Please Print) | CODE NO. |
|---|---|---|---|---|
| | | | Stephen H. Heaker, Sr. | 37CA |

9301                                    Page 4 of 4                                    Prt. 4/06

# MIDLAND NATIONAL®
## Life Insurance Company

*A Member of the Sammons Financial Group*

*7523*

# ACCELERATED BENEFIT SUMMARY AND DISCLOSURE STATEMENT

For Accelerated Benefit Rider – Chronic Illness
And  Accelerated Benefit Rider – Terminal Illness

**EFFECTIVE DATE** – The Accelerated Benefit Rider(s) take effect on the Policy Date.

**PREMIUM** – There is no additional cost for the Accelerated Benefit Rider(s) provided under this life insurance policy. However, there is an administrative fee when the benefit is elected.

**The accelerated benefits provided under the riders of this life insurance policy may provide benefits to pay for long-term care services but are NOT part of a long-term care or nursing home insurance policy and the amount these products pay may not be enough to cover your medical, nursing home or other bills. Accelerated Benefit Payments used to pay for long-term care services are subject to limits imposed by the federal government and any amounts received in excess of these limits are includible in taxable income. You may use the money you receive as an accelerated benefit for any purpose. Unlike conventional life insurance proceeds, amounts payable as accelerated benefits COULD BE TAXABLE UNDER SOME CIRCUMSTANCES. We recommend that you consult your personal tax advisor prior to electing an accelerated benefit.**

**If you already have long term care insurance, Medicaid, or similar coverage, you should consider whether the accelerated benefits provided under this policy are suitable for your needs. Receipt of accelerated benefits under this policy MAY AFFECT YOUR ELIGIBILITY FOR MEDICAID, SUPPLEMENTAL SECURITY INCOME ("SSI"), OR OTHER GOVERNMENT BENEFITS OR ENTITLEMENTS. Contact the Medicaid Unit of your local Department of Public Welfare and the Social Security Administration Office for more information.**

## BENEFIT

Upon written request by the owner ("You") of the policy, the company will pay an accelerated benefit described below, subject to the limitations and requirements outlined in the accelerated benefit riders. Any assignee or irrevocable beneficiary must consent before we make an Accelerated Benefit Payment. The maximum Death Benefit that We will accelerate on the Policy is $1,000,000 under all accelerated benefit riders combined.

**A. Under the Accelerated Benefit Rider – Chronic Illness (Not available on Term or Whole Life Policies),** You may elect to receive advancement of the death benefit when the Insured is Chronically Ill while this Rider is in effect.

An Insured qualifies as being Chronically Ill if a Physician has certified within the last 12 months that the Insured:

1. Is permanently unable to perform for at least 90 consecutive days, without substantial assistance from another person, at least two Activities of Daily Living or

2. Requires substantial supervision by another person to protect oneself from threats to health and safety due to Severe Cognitive Impairment.

Activities of Daily Living are:  bathing, continence, dressing, eating, toileting, or transferring.

Severe Cognitive Impairment means deterioration or loss of intellectual capacity that is measured by clinical evidence and standardized tests which reliably measure impairment in:

1. Short-term or long-term memory; or

2. Orientation to people, places, or time; or

3. Deductive or abstract reasoning.

The maximum Accelerated Death Benefit at each Election is the lesser of 24% of the Death Benefit on the initial Election Date, or $240,000. This amount may be smaller for a Final Election.

Accelerated Benefit Payment – The Accelerated Benefit Payment will be determined as of each Election Date.  Each Payment will be paid in a lump sum, unless a Periodic Payment is chosen.

Periodic Payment – Under a Periodic Payment, We will divide the Payment into equal Periodic Payments that will be paid in lieu of a lump sum Payment. You may select to receive Periodic Payments as frequently as once each month. If the Insured dies before all Periodic Payments have been paid, We will include the remaining Payments with the Death Benefit.

MIDLAND NATIONAL LIFE INSURANCE COMPANY • EXECUTIVE OFFICE • ONE SAMMONS PLAZA • SIOUX FALLS, SD 57193 • PRINCIPAL OFFICE • DES MOINES, IA 50266
Phone: (605) 335-5700 • New Business Fax - Red Team: (605) 373-8571 Blue Team: (605) 335-7583 Green Team: (605) 373-8573 • Fax Center: (605) 335-3621 • Internet: www.MNLife.com

7523                                Page 1 of 3                                Rev. 6/08

Since the Accelerated Death Benefit is paid prior to death, the payment received will be discounted from the amount accelerated.

A Final Election is available if the maximum Accelerated Death Benefit at the time of Election is greater than the remaining Death Benefit in the Policy, excluding the Residual Death Benefit. To make a Final Election, You must choose to accelerate all of the Death Benefit in Your Policy, excluding the Residual Death Benefit. Under a Final Election, the Payment will be paid in lieu of any remaining future Death Benefit under the Policy, excluding the Residual Death Benefit. The Payment must first be applied to pay all debt to Us on the Policy.

Residual Death Benefit – Upon the death of the Insured, We will pay to the Beneficiary any remaining portion of the Death Benefit that We have not accelerated to the Owner under this Rider. If a Final Election has occurred, a Residual Death Benefit will be paid to the Beneficiary in a lump sum upon due proof of the death of the Insured. The Residual Death Benefit will be the greater of 5% of the Death Benefit on the Initial Election Date or $10,000.

**B.   Under the Accelerated Benefit Rider - Terminal Illness,** You may elect to receive advancement of the death benefit when the Insured has a Terminal Illness while this Rider is in effect. An Insured qualifies as being Terminally Ill if a Physician has certified that the Insured's life expectancy is 24 months or less.

The maximum Accelerated Death Benefit for Terminal Illness is the lesser of 50% of the Death Benefit or $500,000.

Accelerated Benefit Payment – The Accelerated Benefit Payment will be determined upon Your election. Payment will be paid in a lump sum.

Since the Accelerated Death Benefit is paid prior to death, the payment received will be discounted from the amount accelerated.

**EFFECT OF THE BENEFIT**

Accelerated benefits paid under these riders will reduce the policy's death benefit and policy values, if any, which include but are not limited to the policy fund, cash surrender value, and loan value.

You may obtain loans as described under the loan provisions of the Policy. A portion of the accelerated benefit payment will be used to repay any Policy Debt.

If You have enacted a Policy provision or Rider that restricts You from making any changes to Your Death Benefit, You may not elect Accelerated Benefits under either of these riders. This includes any restrictions specified by a Policy provision or Rider providing overloan protection.
In addition:

    A. Under the Accelerated Benefit Rider – Chronic Illness **(Not available on Term or Whole Life Policies):**

        1. Following the Final Election, all Riders attached to the Policy will terminate and We will waive all future Monthly Deductions or Premiums associated with the Residual Death Benefit.

        2. Policy Loans are not available following a Final Election.

    B. Under the Accelerated Benefit Rider –Terminal Illness:

        1. If the Policy requires Monthly Deductions or premiums, We will waive the Monthly Deductions or premiums after We have paid Terminal Illness Accelerated Benefits.

        2. You may make a partial Withdrawal of the Policy's Net Cash Surrender Value.

**ACKNOWLEDGEMENT** – I acknowledge that I have received and read this Accelerated Benefit Summary and Disclosure Statement that was furnished to me prior to signing the application.

| Signature of Proposed Owner | Date |
|---|---|
| x *Alma Anderson* | *8-27-2009* |
| Signature of Agent | Date |
| X *(signature)* | *8-27-2009* |

Policy Number _____
For conversions and exchanges please indicate new policy number if assigned.

MIDLAND NATIONAL LIFE INSURANCE COMPANY • EXECUTIVE OFFICE • ONE SAMMONS PLAZA • SIOUX FALLS, SD 57193 • PRINCIPAL OFFICE • DES MOINES, IA 50266
Phone: (605) 335-5700 • New Business Fax- Red Team: (605) 373-8571 Blue Team: (605) 335-7363 Green Team: (605) 373-8573 • Fax Center: (605) 335-3621 • Internet: www.MNLife.com

## Sample Illustration of Impact of Accelerated Benefits on Policy Provisions For Accelerated Benefit Rider-Chronic Illness

**Immediately Prior to initial Election:**

| | |
|---|---|
| Death Benefit (DB) | $100,000 |
| Policy Fund Value | $30,000 |
| Policy Debt | $10,000 |
| Net Cash Surrender Value | $20,000 |
| Monthly Deductions | $300 |

**Initial Election:**

Limitations on Benefits

| | |
|---|---|
| Maximum Accelerated Death Benefit | $24,000 |
|    24% of DB or $240,000 if smaller | |
| Residual Death Benefit | $10,000 |
|    5% of DB or $10,000 if greater | |

Requested on Application for Election:

| | |
|---|---|
| Accelerated Death Benefit | $20,000 |

**Immediately After initial Election:**

| | |
|---|---|
| Death Benefit | $80,000 |
|    Reduced by Accelerated DB | |
|    $100,000 - $20,000 | |
| Policy Fund Value | $24,000 |
|    Reduced by Accelerated DB / DB | |
|    Reduced by $20,000 / $100,000 = 20% | |
|    $30,000 * (100% - 20%) | |
| Debt Repayment Amount | $2,000 |
|    Accelerated DB * Policy Debt / DB | |
|    $20,000 * 10,000 / $100,000 | |
| Policy Debt | $8,000 |
|    Reduced by Debt Repayment Amount | |
|    $10,000 - $2,000 | |
| Monthly Deductions | $0 (Waived) |

## Sample Illustration of Impact of Accelerated Benefits on Policy Provisions For Accelerated Benefit Rider-Terminal Illness

**Immediately Prior to initial Election:**

| | |
|---|---|
| Death Benefit (DB) | $100,000 |
| Policy Fund Value | $30,000 |
| Policy Debt | $10,000 |
| Net Cash Surrender Value | $20,000 |
| Monthly Deductions | $300 |

**Election:**

Limitations on Benefits

| | |
|---|---|
| Maximum Accelerated Death Benefit | $50,000 |
|    50% of DB or $500,000 if smaller | |

Requested on Application for Election:

| | |
|---|---|
| Accelerated Death Benefit | $20,000 |

**Immediately After Election:**

| | |
|---|---|
| Death Benefit | $80,000 |
|    Reduced by Accelerated DB | |
|    $100,000 - $20,000 | |
| Policy Fund Value | $24,000 |
|    Reduced by Accelerated DB / DB | |
|    Reduced by $20,000 / $100,000 = 20% | |
|    $30,000 * (100% - 20%) | |
| Debt Repayment Amount | $2,000 |
|    Accelerated DB * Policy Debt / DB | |
|    $20,000 * 10,000 / $100,000 | |
| Policy Debt | $8,000 |
|    Reduced by Debt Repayment Amount | |
|    $10,000 - $2,000 | |
| Monthly Deductions | $0 (Waived) |

## MIDLAND NATIONAL® Life Insurance Company
*A Member of the Sammons Financial Group*

**APPLICATION PART II**

| Proposed Insured (Please Print) | First Name | M.I. | Last Name | Birth Date (Month, Day, Year) | Social Security Number |
|---|---|---|---|---|---|
| ALMA | (none) | | ANDERSON | Redacted 1929 | |

1a. Name and address of personal physician (if none, so state)    **Redacted**    Physician's Telephone Number **Redacted**

1b. Date and reason last consulted:    **Redacted**

1c. What condition are/were you treated for? (if applicable)?

1d. Are you currently taking any medications or treatment? If yes, list details.    **Redacted**

1e. Are you now under observation or been advised to have any tests, hospitalization, or surgery which has not been completed?
If yes, list details.    **Redacted**

2. Have you ever smoked cigarettes, cigars, pipes, or used tobacco in any form, including smokeless tobacco, nicotine patch, gum or other substitutes?
**Redacted**   If "yes", provide: Type of product(s) used _____
Amount Used: _____   How often: Daily _____ Weekly _____ Monthly _____   Date of last use  mm/yy _____

| | Yes | No | |
|---|---|---|---|
| 3. Within the last ten years, have you ever had or been treated by a medical professional for: | | | DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.) |
| (a) Chest pain, heart murmur, high blood pressure, or any other disease of the heart, blood, or blood vessels? | | Redacted | |
| (b) Peptic ulcer, indigestion, or any other disease of the esophagus, stomach, intestines, gall bladder or liver? | | | |
| (c) Emphysema, bronchitis, asthma, pleurisy, or any other disease of the chest or lungs? | | | **Redacted** |
| (d) Kidney stone, diabetes; albumin, pus, blood or sugar in urine; venereal disease, or any other disease of the kidneys, bladder, prostate or reproductive organs? | | | |
| (e) An immune deficiency disorder (Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex (ARC) or been told test results indicate exposure to the AIDS virus? | | | |
| (f) Severe headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any other disease of the brain or nervous system? | | | |
| (g) Cancer, tumor or any other illness or injury not mentioned above? | | | |
| 4. Other than indicated above, have you: | | | |
| (a) Been hospitalized in the past 5 years? | | | |
| (b) Consulted a physician during the past 5 years? | | | |
| (c) Had a change of weight in the past year? | | | |
| (d) Been advised by a medical professional to get, or undergone any treatment, counselling or hospitalization for alcoholism, excessive alcohol use or abuse? Or, drink on average more than 3 alcoholic drinks per day? | | | |
| (e) Used barbiturates, hallucinatory drugs, narcotics including cocaine, crack, ecstasy, opium derivatives, marijuana, LSD, PCP, or any derivatives of these drugs, or been advised by a medical professional to get, or undergone any treatment, counseling or hospitalization for drug abuse? | | | |
| (f) Had a parent or a brother or sister who before age 60 was diagnosed with or died from cardiovascular disease, stroke, cancer (except basal or squamous cell cancer of the skin) Huntington's Chorea, familial polyposis, or polycystic kidney disease? If yes, provide their age at onset. List the ages of parents and brother & sisters if living, or ages at death if deceased. | | | |
| 5. Are you currently receiving or have an application pending for any illness or disability benefit or compensation? | | | |

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the application and are made to induce the Midland National Life Insurance Company to issue the policy or contract applied for.   x *Alma Anderson*    *9/10/09*

MIDLAND NATIONAL LIFE INSURANCE COMPANY • EXECUTIVE OFFICE · ONE SAMMONS PLAZA · SIOUX FALLS, SD 57193 · Principal Office · Des Moines, IA 50266
Phone: (605) 335-5700 – New Business Fax • Red Team: (605) 373-8571 Blue Team: (605) 335-7668 Green Team: (605) 373-8573 • Fax Center: (605) 335-3621 • Internet: www.MNLife.com   Fn. 1/07
2536A



**PART III – MEDICAL EXAMINER'S REPORT**

| 6a. Height (In Shoes) | Weight (Clothed) | Chest (Full Inspiration) | Chest (Forced Expiration) | Abdomen, at Umbilicus | | Yes | No |
|---|---|---|---|---|---|---|---|
| | | | | b. Did you weigh? | | | Redacted |
| Redacted | | | | c. Did you measure? | | | |
| | | | | d. Is appearance unhealthy or older than stated age? | | | |

| 7. Blood Pressure (Record ALL readings) | 1st | 2nd | 3rd | 8. Pulse | At Rest | After Exercise | 3 Minutes Later |
|---|---|---|---|---|---|---|---|
| Systolic | | | | Rate | | | |
| Diastolic 5th phase | Redacted | | | Irregularities per min | Redacted | | |

Redacted

Send Urine Specimen To Laboratory In Container Provided.    If Blood Specimen Is Required, Send To Laboratory In Kit Provided.

Other Spaces Performed With This Examination:    Is urine specimen being sent to labor    

Redacted    Is person examined menstruating?    Redacted

I certify that I made the examination at

☐ A.M.

☐ P.M.   on the  10  day of  Sept 2009

Examiner's Signature  Rebecca Howard    PORTAMEDIC-120

Examiner's Name (Print Full Name)  REBECCA HOWARD    6660 DOUBLETREE #4    COLUMBUS, OHIO 43229

Examiner's Address (Street, City, State, Zip)    800-336-8347

TAX ID-22-1659359

Examination made at
☐ my office    ☐ Individual's Place of Business
☐ Individual's Residence    ☐ Other
Examination Fee    Tax I.D. Or S.S. No. (IMPORTANT: Payment cannot be made without number.)

Examination Authorized By (Name of Agent - Please Print)  George Drummis

Examiner's Telephone Number
(     )

Please fax this report to

MIDLAND NATIONAL LIFE INSURANCE COMPANY | EXECUTIVE OFFICE | ONE SAMMONS PLAZA | SIOUX FALLS, SD 57193 | Principal Office | Des Moines, IA 50266
Phone: (605) 335-5700 | New Business Fax - Red Team: (605) 373-8571 | Blue Team: (605) 335-7383 Green Team: (605) 373-8573 | Fax Center (605) 335-3621 | Internet: www.MNLife.com.ix.com    Prt. 1/07

**AUTHORIZATION:** To determine eligibility for insurance, I authorize any physician, medical practitioner, health care professional, hospital, clinic, or other medically related facility, laboratory, pharmacy or pharmacy benefit manager, insurance or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, insurance support organization, independent administrator, or other organization, institution, or person, or employer having information available as to diagnosis, prescription history, medications prescribed, treatment and prognosis with respect to information regarding alcoholism, drug abuse, and psychiatric care or any physical or mental condition and/or treatment of me or my minor children and any other nonmedical information of me or my minor children to give to Midland National Life Insurance Company (the Company) or its legal representative, any and all such information. I also authorize the Company to conduct a personal telephone interview in connection with my application; and to release any such data to its reinsurers, the Medical Information Bureau, or other persons or organizations performing business or legal services in connection with my application, or as required by law when given a copy of this authorization. I understand that I may request to be interviewed in connection with the preparation of an investigative consumer report. I understand that I am entitled to receive a copy of the investigative consumer report upon request. This authorization is valid for 30 months from the date signed. I may revoke this authorization for information not then obtained by notifying the Company in writing. Such revocation will not be effective until received by the Company. I understand that I or any authorized representative will receive a copy of this authorization upon request.

**FRAUD WARNING - AR, LA, NM, and OH Residents:** Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**CO Residents:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a contractholder or claimant for the purpose of defrauding or attempting to defraud the contractholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**DC and TN Residents:** Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**PA Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**VA and WA Residents:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the Company. Penalties include imprisonment, fines and denial of insurance benefits.

| Signed At (City and State) | | Date |
|---|---|---|
| Lawrenceburg, Ind | | 9/10/09 |
| Witness Signature | Proposed Insured Signature | |
| Rebecca Howard | Alma Anderson | |

MIDLAND NATIONAL LIFE INSURANCE COMPANY | EXECUTIVE OFFICE | ONE SAMMONS PLAZA | SIOUX FALLS, SD 57193 | Principal Office | Des Moines, IA 50266
Phone: (605) 335-5700 | New Business Fax - Red Team: (605) 373-8571 Blue Team: (605) 395-7562 Green Team: (605) 373-8573 | Fax Center: (605) 335-0621 | Internet www.MNLifecom_ife.com

2336A

Pg 1/07

https://hholtp.bhobos.com//Orders/OrderTicketVi...

NO. 603   P. 9

Received 9/22/2009 10:54:06 AM [Central Daylight Time] in 02-20 on line [u] for 383/3 * Pg 9/10.

 

**MIDLAND NATIONAL®**
Life Insurance Company
*A Member of the Sammons Financial Group*

"10096"

## Senior Questionnaire - Part IV Examiner's Report

Proposed Insured (Please Print)   Last   First   MI   Birth Date (Month, Day, Year)   Social Security Number
ANDERSON, ALMA   Redacted 1959   Redacted 83

**Marital Status:** ☐ Married ☐ Divorced ☐ Separated ☐ Single ☒ Widowed. If Widowed, how long? 4 mos.

1. Do you live alone? ☒ Yes ☐ No. If No, who do you live with?

2. Do you presently live in: ☒ Your own home ☐ Condo/Apt. ☐ Managed Care Facility ☐ Retirement Village
☐ Other (describe)

3. How long have you lived at your present residence? 30 yrs.

4. Are you planning to move from your current living arrangement? ☐ Yes ☒ No   If Yes, When?
Where? _____   Reason? _____

5. In case of emergency or illness, who would care for you? Name daughter / son   Relationship Shirley Graff / Donald Anderson

6. Do you need assistance in any of the following activities?

a. Walking ........................................................... ☐ Yes ☒ No
b. Getting in/out of Bed or Chair ...................................... ☐ Yes ☒ No
c. Bathing/Personal Hygiene ............................................ ☐ Yes ☒ No
d. Getting Dressed .................................................... ☐ Yes ☒ No
e. Continence of bladder/bowel ........................................ ☐ Yes ☒ No
f. Preparation of meals ............................................... ☐ Yes ☒ No
g. Cleaning house .................................................... ☐ Yes ☒ No
h. Managing Finances ................................................. ☐ Yes ☒ No
i. Taking Medication ................................................. ☐ Yes ☒ No
j. Transportation/Do you drive? drives approx. 20 miles/wk   ☐ Yes ☒ No

If you do not drive, when did you stop driving and why? _____

If not driving, what form of transportation are you using? _____

Examiner to record details to yes answers, including what kind of assistance is needed and how often: _____

7. Describe the activities of a typical day, from the time you arise to the time you retire. Include inside and outside activities, physical/recreational activities, any hobbies, volunteer work, or clubs.
Morning: wake - 7a - 4pm radio week. - Breakfast
Afternoon: shopping/laundry/housework - lunch
Evening: dinner - TV, shower, Bed

8. The Examiner is to name these five objects: book, lamp, tree, flower, train, taking one second to say each word. Repeat the five words to the Proposed Insured and then have them repeat the words back to you. Before proceeding, if necessary, repeat the five words. Record the words that the Proposed Insured repeated to you on the next lines. If applicable, describe any difficulties the Proposed Insured may have had.
1. book   2. lamp   3. tree   4. flower   5. train

Comments: _____

Examiner: Inform the Proposed Insured that you will be asking him/her to recall these words later.

p.3   5138412405   Becky Howard   4p08:01 60 01 dəS

9. Please answer the following questions:

a. Who is currently the President of the United States? *Obama*

b. What is today's date? *9/10* c. What is your birthdate? *12/31/29* d. What is your phone number? Redacted *1149*

10. Examiner: Have the Proposed Insured draw the design below in the space to the right.



11. Examiner: Ask the Proposed Insured to repeat the names of the five objects that were named a few minutes ago. (Section 8). Record the words recalled by the Proposed Insured on the lines below. If applicable, describe any difficulties the Proposed Insured may have had.

1. *House* 2. *Train* 3. *Boots* 4. *Tree* 5. _____

Comments: _____

12. Examiner: If you have not had the opportunity to observe the applicant rise from the chair and walk at least 10-15 feet and sit back down, then ask the Proposed Insured to perform the following simple exercise:

Please stand up, walk across the room (at least 10 feet), turn around, walk back to the chair and sit down.

Examiner: Based on your observations, please check the most applicable answer:

Rising:
- [x] Able to rise with ease, required 1 attempt
- [ ] Unable without help, loses balance or requires 2 or more attempts

Walking:
- [x] Walks without aid
- [ ] Mild/Modest deviation or uses walking aid
- [ ] Marked deviation

Turning:
- [x] Steady, without aid
- [ ] Mild staggering but catches self, or uses aid (for example, the wall) for support
- [ ] Almost falls

Sitting:
- [x] Able in a smooth motion
- [ ] Unable without aid or collapses into chair

13. Examiner Observations:

a. Do you have any comments or observations regarding the exercise in section 12? *Walks well, needs NO assistance*

b. Throughout the entire Senior Questionnaire, did you observe any obvious physical or mental abnormalities? *None*

c. Describe the neatness of the Proposed Insured and their home: *Well groomed. Clean neat, orderly, clean clothes*

d. Were there any other individuals present at the time the Senior Questionnaire was completed? If so, please advise their relationship to the Proposed Insured and the role they played in completing the Senior Questionnaire, if any. *None.*

Examiner Signature: *Rebecca Howard*   Date *9/10/09*

10095   Page 3 of 3   Prt. 2/08